ACRO EXTRUSION CORPORATION,
Defendant Below, Appellant,

v.

Phillip CUNNINGHAM, Plaintiff
Below, Appellee.

No. 452, 2001.

Supreme Court of Delaware.

Submitted: Oct. 22, 2002.
Decided: Nov. 15, 2002.

Nancy Chrissinger Cobb, Chrissinger & Baumberger, Wilmington, DE, for Appellant.

Gary S. Nitsche, Weik, Nitsche & Dougherty, Wilmington, DE, for Appellee.

Before VEASEY, Chief Justice, WALSH, HOLLAND, BERGER, and STEELE, Justices, constituting the Court En Banc.

PER CURIAM:

In this appeal from the Superior Court, we address the issue of whether an employee may file a valid *Huffman*[1] suit based on an Industrial Accident Board (the "Board") award where that employee sought, and was granted, reargument and an additional evidentiary hearing before the Board with respect to one claim of several addressed in the Board's decision. We conclude that given the uncertainty surrounding the subsequent Notice of Appeal in the Superior Court, the late correspondence from employee's counsel to carrier's counsel sufficiently delineated the issues upon which the *Huffman* demand was based. Nonetheless, the Superior Court incorrectly calculated the time requirements for default under *Huffman* and we accordingly reverse.

## I.

On February 28, 1997, Phillip Cunningham filed a petition with the Board to determine additional compensation due resulting from a work-related injury he sustained on December 8, 1995 while employed by Acro Extrusion Corporation ("Acro Extrusion"). In his petition, Cunningham alleged total disability, permanent partial disability, and medical expenses. On January 28, 1998 the Board awarded Cunningham permanent disability to his neck and lower back, medical expenses, and attorney's fees. The Board did not address Cunningham's claim for partial disability in its initial decision because it believed the issue had not been raised. On February 13, 1998, Cunningham filed a Motion for Reargument on the issue of partial disability, claiming that this issue had, in fact, been raised in his original petition. On March 23, 1998, the Board granted Cunningham's motion. The Board determined, however, that while Cunningham had indeed raised this issue, an additional evidentiary hearing on partial disability (the "Hearing") was required before a decision could be rendered.

On April 9, 1998, more than three months before the Hearing, Cunningham's counsel sent Acro Extrusion a *Huffman* letter demanding payment on the basis of the Board's January, 28, 1998 decision. Counsel's letter delineated the matters on which the *Huffman* demand was based: permanent partial disability benefits at the percentages assigned by the board, medical expenses, attorney's fees, and medical witness fees (collectively the "Award"). In addition, this letter informed Acro Extrusion that a *Huffman* suit would be filed if payment was not made within thirty days of the letter. Acro Extrusion did not respond to the demand, and Cunningham

1. *Huffman v. C.C. Oliphant & Son,* 432 A.2d     1207 (Del.1981).

filed a *Huffman* suit in Superior Court on May 18, 1998.

On June 29, 1998, the Board held the evidentiary hearing on the issue of partial disability. Cunningham presented no additional evidence, however, and on July 10, 1998, the Board denied his partial disability claim. On July 27, 1998, Cunningham appealed the Board's July 10 decision to the Superior Court. In effect, Cunningham appealed *only* the determination that he was not entitled to partial disability benefits. Cunningham withdrew the appeal on December 31, 1998.

During the time between the appeal of the Board's July 10, 1998 Order, and the withdraw of that appeal, the parties continued to litigate the April 9, 1998 *Huffman* demand. On July 16, 1998, Cunningham's counsel wrote again to Acro Extrusion. On July 24, 1998, Cunningham sought a default judgment against Acro Extrusion for failure to file an answer to the *Huffman* complaint that had been filed in Superior Court on May 18, 1998. On August 21, 1998, however, the Superior Court granted Acro Extrusion's motion to stay the execution of the default judgment. One month later, Cunningham's counsel wrote again to Acro Extrusion, reiterating the demand for payment of the undisputed amounts first outlined in the April 9, 1998 demand letter. On October 13, 1998, the Superior Court granted Acro Extrusion's motion to lift the default judgment but nevertheless ordered it to pay the Award immediately. The next day, although the *Huffman* suit was still pending, Acro Extrusion paid the Award.

Acro Extrusion then moved for summary judgment in the *Huffman* suit to which Cunningham responded with a cross-motion for summary judgment. The Superior Court held that while Cunningham's April 9, 1998 *Huffman* demand was premature, he was nevertheless entitled to summary judgment in his favor because Acro Extrusion was on notice that he expected prompt payment of the compensation awarded, and that to require Cunningham to make a second demand would "def[y] logic and [be] contrary to the philosophy of worker's compensation law[.]" *Cunningham v. Acro Extrusion Corp.*, C.A. No. 98C–05–167, 790 A.2d 507, 512 (Del.Super. 2001). Finally, the court found Acro Extrusion responsible for damages from September 25, 1998 to October 14, 1998—the time between when Cunningham was entitled to *Huffman* damages and when Acro Extrusion finally paid the Award. *Id.* at 512. Acro Extrusion appeals from this judgment, arguing that the Superior Court erred as a matter of law when it determined that a premature *Huffman* demand became valid with the mere passage of time.

## II.

This Court reviews *de novo* the Superior Court's decision to grant summary judgment. *Blue Hen Lines, Inc. v. Turbitt*, 787 A.2d 74, 77 (Del.2001). On appeal, the Court must view the evidence, and all reasonable inferences taken therefrom, in the light most favorable to the non-moving party and determine whether an issue of material fact exists such that summary judgment was improper. *Id.* "The moving party bears the burden of demonstrating both the absence of a material fact and entitlement to judgment as a matter of law." *Id.*

In *Blue Hen Lines*, this Court noted that an award becomes final when the statutory period of thirty days passes without an appeal. *Blue Hen Lines*, 787 A.2d at 78 (quoting 19 *Del. C.* § 2349). Thus, even if either party appeals certain aspects of the Board's decision, a claimant may make a *Huffman* demand for pay-

ment of the amounts due under the unappealed portion of the Board's decision. Id. Further, "[i]f the employer fails to make payment within thirty days of the demand, the employer may become liable for liquidated damages as provided by statute." Id. at 78–79.

In *Delmarva Warehouses, Inc. v. Yoder*, 2001 WL 1329691, *1, 784 A.2d 1080 (Del. 2001), we addressed a situation similar to the matter presented here. In *Yoder*, the employee-claimant's attorney made a *Huffman* demand a mere four days after the Superior Court affirmed the Board's decision awarding benefits. Id. at *1, 784 A.2d 1080. Once the appeal period had run, Yoder filed suit against the employer for nonpayment of the award. Id. Despite the fact that Yoder did not make a second, timely demand, we affirmed the judgment of the Superior Court granting Yoder damages for the delay. Id. In particular, we held that "it would be an unreasonable elevation of form over substance to require the employee to reassert his demand in order to trigger the employer's obligation to pay the award." *Yoder*, at *1, 784 A.2d 1080.

In the final analysis, however, the focus of the *Huffman* award must be on the employer's failure to pay once the thirty day default period has expired after proper demand. Our review of the record suggests that the critical time line begins when the Board rendered its decision on July 10, 1998, not July 16, 1998 as determined by the Superior Court. Although

the Board's decision became final on July 10, Cunningham's notice of appeal injected confusion into the process because it did not specify that Cunningham accepted certain portions of the award.[2] The Superior Court correctly combined the thirty day appeal period with the additional seven days imposed by Board rule but did not apply the September 21, 1998 letter of demand as the *Huffman* trigger. Had the notice of appeal been unambiguous, the September 21, 1998 demand letter would not have been required under *Yoder*. It was, however, necessary here because of the confusion introduced by Cunningham's notice of appeal, and thus it served as a *Huffman* trigger.

We conclude that the *Huffman* trigger, *i.e.*, the event that begins the thirty day statutory period for payment, was the September 21, 1998 letter because it put the employer on clear notice that Cunningham was appealing only the denial of partial disability benefits. Since the employer paid the undisputed portion of the award within thirty days of the September 21, 1998 reiteration of the *Huffman* demand, Cunningham was not entitled to payment of damages. Accordingly, we reverse the judgment of the Superior Court.

---

2. We have urged the Superior Court to adopt a rule that would require a claimant to specify in his notice of appeal that portion of the award accepted. *Blue Hen Lines,* 787 A.2d at 79. This case illustrates, yet again, the need for such a rule.