# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

|  |  |  |
|---|---|---|
| ROBERT STINSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. N16C-05-135 VLM |
| | ) | |
| HOME DEPOT USA, INC.; | ) | |
| LIBERTY MUTUAL INSURANCE | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Submitted: February 16, 2017
Decided: April 20, 2017

## ORDER

*Upon Consideration of Defendant Home Depot USA, Inc.'s Motion for Judgment on the Pleadings,* **GRANTED.**

**AND NOW TO WIT,** this 20th day of April, 2017, upon consideration of Defendant Home Depot USA, Inc. ("Home Depot")'s Motion for Judgment on the Pleadings, Plaintiff's response thereto, the parties' positions at oral argument, and their post-argument letter submissions, **IT IS HEREBY ORDERED** that Home Depot's Motion for Judgment on the Pleadings is **GRANTED**, for the following reasons:

### Factual and Procedural Background

1. Plaintiff Robert Stinson seeks to recover *Huffman* damages for a work-related injury he suffered seven years ago after he slipped and injured his right knee while working at Home Depot in Claymont, Delaware.[1]

2. Plaintiff initially filed a Petition to Determine Compensation Due ("Petition") with the Delaware Industrial Accident Board ("IAB") on or about August 2, 2010. The Petition sought compensation for Plaintiff's total disability benefits ("lost wages"), medical expenses, and attorney's fees. An IAB hearing was scheduled for December 30, 2010.

3. Home Depot and Plaintiff (the "parties") exchanged documents and began settlement discussion in advance of the IAB hearing. The parties' correspondence during this period is highly germane to the present Motion and is, therefore, outlined in great detail below:

- On **December 22, 2010**, then-counsel for Home Depot, Mr. Simpson, writes Plaintiff's counsel.[2] Mr. Simpson acknowledges receipt of the medical records from Plaintiff's surgery and confirms that Home Depot agrees that his "surgical procedure" is "compensable." He states: "I am currently awaiting confirmation from my client of the exact dates the claimant missed from work as a result of the work injury as well as the claimant's wage information in order to calculate his average weekly

---

[1] The facts in this Order are derived from the Complaint, filed on May 13, 2016, unless otherwise noted. *See* Trans. I.D. #59007979. All the allegations in the Complaint are accepted as true for purposes of Home Depot's Motion for Judgment on the Pleadings. *See Fagani v. Integrity Fin. Corp.*, 167 A.2d 67, 75 (Del. Super. 1960). *See also Desert Equities, Inc. v. Morgan Stanley Leveraged Equity Fund, II, L.P.*, 624 A.2d 1199, 1205 (Del. 1993).

[2] Complaint at Ex. 4.

2

wage and corresponding workers' compensation rate. Once I have that information I will forward it to you. . . ." Mr. Simpson then seeks Plaintiff's counsel's confirmation that the IAB hearing is unnecessary given his statements above.

- Between **December 22, 2010** and **December 29, 2010**, settlement negotiations ensue between the parties. On **December 29, 2010**, Plaintiff's counsel drafts a letter to Mr. Simpson "confirm[ing] our resolution of the [Petition]."[3] However, it is undisputed that this letter was not sent to Mr. Simpson until **January 19, 2011**. The letter states the terms of the putative agreement: first, Home Depot will "acknowledge compensability of Mr. Stinson's work related injury to his right knee" for a period of total disability from June 2, 2010 to September 17, 2010—at an average weekly wage of $900.14; compensation rate of $600.12; equaling $9,173.26 for the total period. Second, Plaintiff's medical treatment is reasonably related to his injury. Plaintiff's counsel states that he already sent a copy of "most of the medical expenses" to Mr. Simpson and that he would forward additional bills to him. Third, Home Depot would "tender an attorney's fee;" he demands $6,000.00. Fourth, Home Depot "will also tender payment/reimbursement for mileage reimbursement expenses incurred." Plaintiff's counsel confirms that he has canceled the IAB hearing scheduled for the next day.

- On **January 12, 2011**, Mr. Simpson writes Plaintiff's counsel to "confirm that the [Petition] has settled with the Employer's agreement to acknowledge the claimant's right knee injury of 6/2/10 as compensable as well as the surgical procedure performed. . . ."[4] He attaches Plaintiff's wage records, showing a different average weekly wage of $710.68 for 26 weeks disability. He further states that this new calculation translates to a compensation rate of $473.79 and a total payment of $6,159.27 "if this figure is accurate."[5] Mr. Simpson states that the period of disability runs from June 12, 2010 to September 11, 2010.[6] He also restates that he is "awaiting confirmation from [his] client" as to the dates and numbers

---

[3] Complaint at Ex. 5.

[4] Complaint at Ex. 6.

[5] *Id.* (emphasis in original).

[6] The Complaint alleges these dates are typographical errors.

above and asks Plaintiff's counsel to confirm or deny the dates and figures. He requests a demand for legal fees. He further requests any outstanding medical bills. Finally, he explains that Home Depot believes Plaintiff received other disability benefits for the period of disability for which Home Depot would be entitled to a credit or offset in the total figure above, and asks that Plaintiff's counsel confirm whether Plaintiff received such benefits for purposes of a credit. The letter concludes with an integration/merger provision.

- On **January 24, 2011**, Mr. Simpson writes again to Plaintiff's counsel, asking Plaintiff's counsel to confirm the same figures as his January 12, 2011 letter, but provides that the dates of disability are now June 3, 2010 to September 6, 2010. The total disability payment is adjusted accordingly to $6,429.60. Mr. Simpson further states that Plaintiff had, in fact, received short term disability benefits for the same period in the amount of $5,028.38. This figure is used as a credit against the total payment figure, making the net settlement of the disability period $1,401.22. Mr. Simpson asks Plaintiff's counsel to confirm the acceptance of these numbers. Mr. Simpson also relays his client's offer of $3,000.00 in attorney's fees.

- The next correspondence is dated seven months later, on **August 24, 2011**.[7] On that date, Plaintiff's counsel writes to Mr. Simpson to "acknowledge the receipt of your letters of January 12 and January 24, 2011. . . . Be advised that I had thought that this letter—which was dictated in February—went out to you in early March."[8] Acknowledging the produced wage records from Mr. Simpson, Plaintiff's counsel agrees to Mr. Simpson's calculations of the average weekly wage and compensation rate. However, he argues that the original period of disability is from June 2, 2010 to September 11, 2010 and states that he disagrees with "the balance of" Mr. Simpson's January 24, 2011 letter. Plaintiff's counsel writes that Mr. Simpson was "now claiming, for the first time, that your client is entitled to a credit for short term disability benefits. . . ." The letter threatens a *Huffman* suit based on the assertion of this credit but it is unclear what the amount due would have been since Plaintiff's counsel was then disputing Home Depot's calculations.

---

[7] *But see infra*, note 21.

[8] Complaint at Ex. 8.

4

- Plaintiff concludes his August 24, 2011 letter with a harbinger of this litigation. He states: "**That said, kindly accept this as the claimant's demand for payment of all sums due as outlined in my letter dated December 29, 2010**, following our discussion regarding settlement. Please note again that the **only modification** to that agreement concerns the compensation rate. . . . Otherwise, the terms of our agreement are binding, and I expect your client to honor them. This includes, <u>inter alia</u>, payment of total disability benefits to Mr. Stinson in the amount of $6,429.40 for the period of total disability from 06/03/10 through 09/06/10. **This demand is being made pursuant to <u>Huffman v. C.C. Oliphant & Sons, Inc.</u> . . .**"

- On **September 14, 2011**, Plaintiff's counsel writes to Mr. Simpson enclosing—for the first time—Plaintiff's actual mileage expenses.[9] He demands $129.41 within thirty days of the letter and attaches addresses, maps, and directions for each mileage claim.

4. On May 13, 2016, Plaintiff filed this case, alleging three *Huffman* claims (lost wages, unpaid physical therapy bills, and mileage reimbursement) and one count of Breach of Duty of Good Faith and Fair Dealing. The filing of the Complaint comes almost six years after the original injury and over four years after Plaintiff's counsel's August 24, 2011 letter.

5. Home Depot moved for Judgment on the Pleadings on August 29, 2016. Plaintiff responded in opposition to the Motion on October 28, 2016. Home Depot filed a reply brief on November 14, 2016. Oral argument on the Motion was held on January 30, 2017. The Court then ordered both parties to submit letter briefs to clarify an issue regarding the submission of Plaintiff's physical therapy

---

[9] Complaint at Ex. 9.

bills to Home Depot. The parties submitted their supplemental briefs on February 14, 2017 and February 16, 2017 respectively. The Motion is now ripe for decision.

### *Standard of Review*

6. A motion for judgment on the pleadings is akin to a motion to dismiss or general demurrer to the plaintiff's complaint.[10] Under Rule 12(c), the motion may be raised at any time after the pleadings are closed and within such time so as to not delay trial.[11] The motion accepts as true the allegations in the complaint and contends that they are insufficient as a matter of law to grant relief to the plaintiff.[12] Where the pleadings raise "any material issue of fact," denial of the motion is appropriate.[13] Any factual assertions must be contained within the pleadings themselves.[14] If a motion injects material outside the pleadings, the motion is converted to a motion for summary judgment.[15]

---

[10] *See Fagani v. Integrity Fin. Corp.*, 167 A.2d 67, 75 (Del. Super. 1960).

[11] DEL. SUPER. CT. CIV. R. 12(c).

[12] *See Fagani*, 167 A.2d at 75. *See also Desert Equities, Inc. v. Morgan Stanley Leveraged Equity Fund, II, L.P.*, 624 A.2d 1199, 1205 (Del. 1993) (addressing DEL. CH. CT. CIV. R. 12(c)).

[13] *See Fagani*, 167 A.2d at 75. *See also Desert Equities*, 624 A.2d at 1205 (citing *Fagani*, 167 A.2d at 75).

[14] *See id.*

[15] *Jones v. Julian*, 188 A.2d 521, 522 (Del. Super. 1963), *rev'd on other grounds*, 195 A.2d 388.

6

## *Contentions of the Parties*

7.     The issues in this Motion may be subdivided according to the subject matter of the *Huffman* claim: lost wages, medical expenses, and mileage reimbursement. First, the issue of lost wages commands the most amount of ink. As to this demand, Home Depot argues that the parties never reached a settlement agreement because the parties never came to a "meeting of the minds" regarding the "amount due" to Plaintiff.[16] It argues that Plaintiff's counsel's failure to send Mr. Simpson the December 29, 2010 letter—the very letter Plaintiff contends is the "settlement agreement"—evinces a lack of mutual assent to be bound by the terms of the December 29, 2010 letter.[17] Home Depot notes that Mr. Simpson's December 22, 2010 letter conditions acceptance of the proposed figures on Home Depot's confirmation of the dates of disability and respective wage figures.[18] Mr. Simpson's January 12, 2011 letter further manifests the conditional nature of the negotiations.[19] Like ships passing in the night, the January 24, 2011 letter does not reference the December 29, 2010 letter, further bolstering Home Depot's primary

---

[16] Defendant's Motion at ¶ 4.

[17] Defendant's Motion at ¶ 6.

[18] Defendant's Motion at ¶ 9.

[19] Defendant's Motion at ¶ 12 (noting Mr. Simpson underlined "if this figure is accurate" in the letter).

contention.[20] Defendant appends to its Motion correspondence between January 24, 2011 and August 24, 2011 that is not attached as an exhibit to Plaintiff's Complaint and is not referenced in the Complaint.[21]

8.      Second, as to the medical bills, Home Depot contends that Exhibit 1 to Plaintiff's Complaint—containing medical bills for Plaintiff's postsurgical physical therapy and addressed to Plaintiff's home—fails to show that these bills were ever submitted to Defendants for purposes of a *Huffman* demand.[22]

9.      Third, as to the mileage reimbursement demand, Home Depot points to the date of the letter submission (September 14, 2011) and suggests that this is

---

[20] Defendant's Motion at ¶ 16.

[21] *See* Defendant's Motion at Ex. A-C. The first letter (Ex. C) is dated April 25, 2011. Mr. Simpson writes: "I am writing in follow-up to my letter to you on January 24, 2011, and my follow-up e-mail transmission to you of [sic] February 25, 2011. Please contact me as soon as possible and *advise whether we can agree to the appropriate* average weekly wage and workers' compensation rate calculations *as well as the net amount* of benefits owed to the claimant *less my* client's credit for short term disability benefits." Defendant's Motion at Ex. C (emphasis added). He continues: "In addition, in follow-up to your April 16, 2011 correspondence, I have authority to extend an offer of $5,000.00 for an attorney fee. . . ." *Id.*

  The second letter (Ex. A) is dated May 15, 2011, and is sent from Plaintiff's counsel to Mr. Simpson. The letter states: "As you are aware, we finalized the agreement relative to the above case by specifically agreeing on the amount of an attorney's fee in the amount of $5,000. Kindly accept this as the Claimant's demand for prompt payment of same, pursuant to Huffman. . . ." Defendant's Motion at Ex. A.

  The third letter (Ex. B) is dated June 2, 2011 and is sent again by Mr. Simpson to Plaintiff's counsel. In this letter, Mr. Simpson encloses $5,000 in attorney's fees "*in association with our recent settlement agreement in this matter.*" Defendant's Motion at Ex. B (emphasis added). He also writes: "Please contact me as soon as possible and advise me of your final position concerning the amount of total disability benefits owed . . . and application of the appropriate credit. . . ." *Id.* Mr. Simpson openly assumes in the letter that the *Huffman* demand "in that regard has been satisfied. If for any reason you believe I am mistaken, please advise immediately." *Id.*

[22] Defendant's Motion at ¶ 21. *See also* Complaint at Ex. 1.

proof that no mileage amount was ever "due" pursuant to the workers' compensation statute and *Huffman*.[23]

10. It is undisputed that the December 29, 2010 letter was not timely sent. Nevertheless, Plaintiff responds by arguing that an enforceable agreement existed as of December 29, 2010, despite the non-delivery of this letter.[24] Plaintiff argues that a settlement agreement existed and that any changes to the underlying agreement were merely modifications to this agreement. The first modification was a requested change to the average weekly wage and corresponding workers' compensation rate (i.e., Mr. Simpson's January 12, 2011 letter). The second modification was a requested application of a credit for short term disability benefits Plaintiff may have received during the period of disability (i.e., Mr. Simpson's January 24, 2011 letter). Plaintiff agreed to the former, but rejected the latter. Thus, Plaintiff contends that there is a valid settlement agreement and Plaintiff's August 24, 2011 letter suffices to put Home Depot on notice of his *Huffman* demands with respect to his claims for lost wages, medical expenses, and mileage reimbursement.

---

[23] Defendant's Motion at ¶ 22.

[24] Plaintiff's Response at 13.

## *Discussion*

11.     "An employer is responsible for paying compensation to an employee where the parties either enter into a voluntary agreement regarding benefits or where the IAB enters an order requiring the employer to pay."[25]  Pursuant to 19 *Del. C.* § 2357, if "default is made by the employer for 30 days after demand in the payment of any amount due under [Delaware's workers' compensation statute], the amount may be recovered in the same manner as claims for wages are collectible.[26] Wages are recoverable under Title 19, Chapter 11 of the Delaware Code.[27] According to § 1113(a), "[a] civil action to recover unpaid wages and liquidated damages may be maintained in [Delaware Superior Court]."[28]

12.     A "*Huffman* claim" is shorthand for a "[c]ivil action[] filed under 19 *Del. C.* § 2357 'to collect unpaid workers' compensation awards. . . .'"[29]  A *Huffman* claim seeks an award for "the employer's failure to pay once the thirty

[25] *Rawley v. J.J. White, Inc.*, 918 A.2d 316, 319 (Del. 2006) (internal footnotes omitted). *Huffman* claims apply to voluntary agreements that are not formally approved by the IAB. *See Seserko v. Milford Sch. Dist.*, 1992 WL 19941, at *2 (Del. Super. Feb. 4, 1992).

[26] 19 *Del. C.* § 2357 (2013 & Supp. 2016).

[27] *Huffman v. C.C. Oliphant & Son, Inc.*, 432 A.2d 1207, 1210 (Del. 1981).

[28] 19 *Del. C.* § 1113(a) (2013 & Supp. 2016). *See Huffman*, 432 A.2d at 1210.

[29] *LeVan v. Indep. Mall, Inc.*, 940 A.2d 929, 934 (Del. 2007) (quoting *Nat'l Union Fire Ins. Co. of Pittsburgh v. McDougall ex rel. McDougall*, 877 A.2d 969, 971 (Del. 2005)).

day default period [of § 2357] has expired after proper demand."[30]  Once the employer defaults, the claimant is entitled to file suit to recover "liquidated damages, attorneys' fees and costs."[31]  "The purpose behind the demand requirements of Section 2357 is to put defendants on notice of their default and permit them to cure their deficiency within thirty days in order to avoid incurring liquidated damages. . . ."[32]

### A.    Lost Wages

13.    "Delaware law favors the voluntary settlement of contested issues."[33] As a contract, a valid settlement "exists when (1) the parties intended that the contract would bind them, (2) the terms of the contract are sufficiently definite, and (3) the parties exchange legal consideration."[34]  Since Delaware "adheres to the 'objective' theory of contracts," the settlement is viewed from the perspective of an

---

[30] *Id.* (quoting *Acro Extrusion Corp. v. Cunningham*, 810 A.2d 345, 348 (Del. 2002)).

[31] *Ramirez v. Murdick*, 948 A.2d 395, 397 (Del. 2008) (citations omitted).  *See also Blue Hen Lines, Inc. v. Turbitt*, 787 A.2d 74, 78 (Del. 2001).

[32] *Kelly v. ILC Dover, Inc.*, 787 A.2d 751, 754 (Del. Super. 2001).

[33] *Polk v. Good*, 507 A.2d 531, 535 (Del. 1986) (citing *Rome v. Archer*, 197 A.2d 49 (Del. 1964)).

[34] *Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1158 (Del. 2010) (citing *Carlson v. Hallinan*, 925 A.2d 506, 524 (Del. Ch. 2006)).  *See also Loppert v. WindsorTech, Inc.*, 865 A.2d 1282, 1285 (Del. Ch. 2004).

"objective, reasonable third party."[35] "A settlement agreement may leave matters to future negotiation 'if those are not "essential" terms.'"[36] However, in the context of a *Huffman* claim, a "general agreement to pay for the expenses of a medical procedure does not preclude the employer from verifying a charge or disputing the reasonableness of the charge eventually submitted."[37]

14. The Court finds that an "objective, reasonable third party" could not find sufficient indicia of the parties' mutual intent to be bound by the terms of the December 29, 2010 letter. This is primarily true given the undisputed evidence that Plaintiff's counsel failed to deliver this unilaterally-drafted letter to Mr. Simpson in a timely fashion. Accepting as true the allegations in the Complaint, as the Court must on a motion for judgment on the pleadings, the flurry of negotiations that took place between the parties showed that there were moving targets with respect to material terms of the alleged settlement agreement. This includes material terms such as the correct figure for lost wages, attorney's fees, medical expenses, and any potential credits owed to the employer. The indefiniteness of these terms in December 2010 and January 2011 leads to one inescapable conclusion: the parties never reached a settlement regarding Plaintiff's

---

[35] *Osborn*, 991 A.2d at 1159 (quoting *NBC Universal v. Paxson Commc'ns*, 2005 WL 1038997, at *5 (Del. Ch. Apr. 29, 2005)).

[36] *Stone Creek Custom Kitchens & Design v. Vincent*, 2016 WL 7048784, at *3 (Del. Super. Dec. 2, 2016) (quoting *Spacht v. Cahall*, 2016 WL 6298836, at *3 (Del. Super. Oct. 27, 2016)).

[37] *Rawley v. J.J. White, Inc.*, 918 A.2d 316, 321 (Del. 2006).

lost wages claim. A necessary corollary of this conclusion is that no "amount due" ever existed for Plaintiff's lost wages claim sufficient to trigger *Huffman* exposure. This is especially true where even Plaintiff's counsel, as late as August 2011, was still disputing the period of disability as calculated by Home Depot. Because the December 29, 2010 letter cannot reasonably be viewed as a settlement of the lost wages claim, and the parties' course of conduct following this letter reveals that no agreement in fact was reached, Home Depot's Motion as to Plaintiff's lost wages *Huffman* claim is **GRANTED**.

### B. *Medical Bills*

15. The issue of whether the *Huffman* demand for unpaid medical bills can survive the Motion is limited in scope to Plaintiff's postsurgical physical therapy bills. 19 *Del. C.* §§ 2322, 2322F set forth detailed requirements regarding the mechanism of submitting and paying medical expenses incurred by the workers' compensation claimant. Section 2322F(a) requires the submission of qualifying medical bills to the employer "along with a bill or invoice of the charges, accompanied by records or notes, concerning the treatment or services submitted for payment, documenting the employee's condition and the appropriateness of the . . . therapy, with reference to the health care practice guidelines adopted pursuant to § 2322C. . . ."

13

16. At oral argument, Plaintiff's counsel could only point to Exhibit 1 of his Complaint, which shows a billing statement for physical therapy from August 16, 2010 to September 14, 2010 issued directly to Plaintiff. In his submission to this Court following oral argument, Plaintiff's counsel offers inferential arguments that these medical bills were sent in compliance with §§ 2322, 2322F without providing any specific documentation. Instead, he "recalls" the production of medical records contained "each provider's billing ledger."[38] He also picks at Mr. Simpson's language in his January 2011 letters to support his recollection that the medical records contained medical bills in compliance with the statute.[39]

17. This Court finds that the *Huffman* claim as to the medical bills for Plaintiff's postsurgical physical therapy must be dismissed. The sine qua non of a *Huffman* claim is ample prior notice to Defendant of a specific amount due and a demand to pay the amount due within thirty days.[40] General agreements or passing references to "medical bills" are insufficient.[41] Moreover, the statute contemplates the production of medical bills directly to the employer or insurance carrier.[42] This is not antediluvian formalism, but a requirement based in common sense: the

---

[38] Plaintiff's Letter Response at 1, D.I. #27 (Feb. 14, 2017).

[39] *See id.* at 1-2.

[40] *See Rawley*, 918 A.2d at 319-21.

[41] *See id.* at 321.

[42] *See* 19 *Del. C.* § 2322F(a) (2013 & Supp. 2016).

employer should be on notice of exactly the items it is requested to pay before a *Huffman* demand puts the employer's nose to the grindstone. This is all the more important when a *Huffman* claim—epitomized by this case—is filed years after the asserted non-payment of medical bills. Thus, Plaintiff's inability to produce documents—those that would be in the possession of Plaintiff's counsel—that are essential to his *Huffman* claim demonstrates the legal deficiency of his *Huffman* claim as to the unpaid medical bills for Plaintiff's postsurgical physical therapy. Home Depot's Motion as to this claim is, therefore, **GRANTED**.

### C. Mileage Reimbursement

18. The fourth item referenced in the December 29, 2010 letter drafted by Plaintiff's counsel contains the following: "Your client will also tender payment/reimbursement for mileage expenses incurred in traveling to and from all of the healthcare providers necessary to treat Mr. Stinson as a result of his injury." It is clear from this language that no *Huffman* claim can arise from this statement; there is no "amount due" to be paid to Plaintiff.[43]

19. At oral argument, Plaintiff's counsel suggested that the simple delivery of medical records to Home Depot during this period of disability, coupled with the December 29, 2010 letter, is sufficient to establish an "amount

---

[43] 19 *Del. C.* § 2322(g) provides workers' compensation claimants with a statutory right to mileage reimbursement.

due" subject to a *Huffman* claim.[44] This assertion beggars logic. The implication of such a contention would require the employer or insurer to compute the mileage for Plaintiff—presumably using Plaintiff's residence as starting and ending point for each medical visit. Needless to say, there would be innumerable flaws in this process, as the employer or insurer would be assuming Plaintiff traveled to various locations in precisely the same manner each time. Not only would the employer or insurer have to calculate the mileage reimbursement, a subsequent *Huffman* demand for the same would subject the employer or insurer to additional penalties if they fail to pay Plaintiff the uncalculated mileage reimbursement. This Court is not persuaded that the employer should bear such a burden. Therefore, the mileage reimbursement *Huffman* claim must be dismissed because no "amount due" existed for this item under § 2357 as reflected in the December 29, 2010 letter. Home Depot's Motion as to this claim is **GRANTED**.

### *Breach of Duty of Good Faith and Fair Dealing*

20. A claimed breach of the implied covenant of good faith and fair dealing does not exist "unattached to the underlying legal document."[45] The implied covenant of good faith "'is best understood as a way of implying terms in

---

[44] After questioning from the Court, Plaintiff's counsel retreated and implied that this assertion "may go towards bad faith."

[45] *Dunlap v. State Farm Fire & Cas. Co.*, 878 A.2d 434, 441 (Del. 2005) (quoting *Glenfed Fin. Corp., Commercial Fin. Div. v. Penick Corp.*, 647 A.2d 852, 858 (N.J. Super. Ct. App. Div. 1994)).

the agreement,' whether employed to analyze unanticipated developments or to fill gaps in the contract's provisions."[46] In general, this covenant seeks to prevent the contracting party from engaging in arbitrary or capricious conduct with the intent to frustrate the purpose of the contract.[47]

21.     As stated above, the Court finds that there is a no material dispute regarding whether the December 29, 2010 letter constitutes a voluntary settlement agreement for purposes of Plaintiff's *Huffman* claim for lost wages. Hence, absent the existence of an "underlying legal document," Plaintiff's bad faith claim cannot survive dismissal on the pleadings. Therefore, Home Depot's Motion as to this claim is **GRANTED**.[48]

---

[46] *Id.* (footnotes omitted) (quoting *E.I. DuPont de Nemours & Co. v. Pressman*, 679 A.2d 436, 443 (Del. 1996)).

[47] *See id.*

[48] The Court is concerned about the considerable delay in prosecuting this case after the *Huffman* demand in August 24, 2011. The injury for which Plaintiff sought workers' compensation benefits occurred less than one month shy of six years from the date this case was filed. Two salient documents in the record—the December 29, 2010 and August 24, 2011 letters—went undelivered for significant periods of time; the former was faxed three weeks late, and the latter was delivered approximately seven months after it was dictated. The irony, therefore, of Plaintiff's claim of breach as to Count IV in the Complaint is perhaps lost on Plaintiff's counsel—but it is not lost on this Court. At oral argument, Plaintiff's counsel explained that he filed the claim in May 2016 after realizing there were outstanding payments from Home Depot. Instead of notifying Home Depot, he filed suit alleging three *Huffman* claims. There are several mechanisms built into the workers' compensations statute that adequately protect the rights of claimants to speedily obtain compensation for injuries sustained while employed. These mechanisms suggest that this type of litigation will rarely occur; and certainly imply that litigation need not sit in limbo for years before a *Huffman* claim is filed.

## *Conclusion*

22. Accepting as true the allegations in Plaintiff's Complaint, the Court finds that there is no material issue of fact regarding whether the parties agreed to settle Plaintiff's lost wages claim sufficient to trigger *Huffman* damages. Because no "amount due" was ever established for Plaintiff's lost wages, medical expenses, and mileage reimbursement *Huffman* claims, Home Depot is entitled to judgment as a matter of law.

For the above stated reasons, Defendant Home Depot USA, Inc.'s Motion for Judgment on the Pleadings is **GRANTED**.

**IT IS SO ORDERED.**

Judge Vivian L. Medinilla

oc: Prothonotary
cc: All Counsel of Record (via e-filing)