# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

RICHARD QUAILE,                       )
                                      )
   Claimant-Below/Appellant,          )
                                      )
v.                                    )      C.A. No. N20A-05-003 JRJ
                                      )
TBC CORPORATION,                      )
                                      )
   Employee-Below/Appellee.           )
                                      )

## MEMORANDUM OPINION

Submitted: October 7, 2020
Decided: November 10, 2020

*Upon Richard Quaile's Appeal from Decision and Order of the Industrial Accident Board*: **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED IN PART.**

Adam F. Wasserman, Esquire, Ciconte Scerba, LLC, 1300 North King Street, Wilmington, Delaware 19801, Attorney for Claimant-Below/Appellant.

Paul V. Tatlow, Esquire, Marshall Dennehey Warner Coleman & Goggin, P.C., 1007 North Orange Street, Suite 600, P.O. Box 8888, Wilmington, Delaware 19801, Attorney for Employer-Below/Appellee.

**Jurden, P.J.**

# I. INTRODUCTION

Richard Quaile ("Claimant") was injured while working for his employer, TBC Corporation a/k/a National Tire and Battery ("Employer").[1] Seeking acknowledgment of his injuries, Claimant filed a Petition to Determine Additional Compensation Due with the Industrial Accident Board (the "Board").[2] The Board granted Claimant's petition in full.[3] Subsequent medical issues prompted Claimant to file a Petition for Disfigurement and another Petition to Determine Additional Compensation Due on February 7, 2020.[4] The Board granted Claimant's petitions in large part.[5] But the Board (1) refused to award permanent impairment benefits for Claimant's rectal issues and (2) ordered Employer to compensate Claimant for his medical expenses according to the fee schedule outlined in 19 *Del. C.* § 2322B (the "fee schedule").[6] Seeking to challenge these two aspects of the Board's decision, Claimant filed a Motion for Reargument with the Board.[7] The Board denied the motion in an order issued on April 29, 2020.[8] Claimant now appeals.[9]

---

[1] Decision on Petition to Determine Compensation Due, at 2 (A2) (Trans. 65927833). Citations to pages A1 through A134 refer to the pages of the Appendix to Claimant-Below Appellant's Opening Brief (Trans. 65927833).

[2] Decision on Petition to Determine Compensation Due, at 2 (A2).

[3] Decision on Petition to Determine Compensation Due, at 32 (A32).

[4] *See* Decision on Petition for Determination of Additional Compensation Due ("Decision on DACD Petition"), at 2 (A87).

[5] *See generally* DACD Petition (A86–A118).

[6] *Id.* at 27 & n.13 (A112).

[7] *See generally* Claimant's Motion for Reargument of Board Decision (A119–A125).

[8] *See generally* Order on Claimant's Motion for Reargument (A126–A134).

[9] *See generally* Notice of Appeal (Trans. ID. 65617166). On September 15, 2020, Claimant filed his Opening Brief. Claimant-Below Appellant's Opening Brief on Appeal ("Opening Brief")

As explained below, the Board's decision and order are **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED IN PART.**

## II. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Although Claimant's appeal is limited to two aspects of the Board's February 7, 2020 decision (which the Board affirmed in its April 29, 2020 order), the events leading up to the February 7, 2020 decision serve as important context. The Court will briefly discuss those events before moving onto the issues in this appeal.

### A. The February 7, 2020 Decision

#### 1. Background to the February 7, 2020 Decision

On August 31, 2015, Claimant was working for Employer when he fell from a ladder and suffered injuries.[10] On October 20, 2015, Claimant filed a Petition to Determine Compensation Due with the Board, seeking acknowledgement of injuries to his right foot, right leg, and low back.[11] On January 29, 2016, Claimant and Employer entered into an agreement for temporary total disability.[12] In the agreement, Employer recognized injuries only to Claimant's right foot and right

---

(Trans. ID. 65927833). On October 5, 2020, Employer filed is Answering Brief. Answering Brief of Employer-Below/Appellee on Appeal ("Answering Brief") (Trans. ID. 65990099). And on October 7, 2020, Claimant filed his Reply Brief. Claimant-Below Appellant's Rely Brief on Appeal ("Reply Brief") (Trans. ID. 65999362).

[10] Decision on Petition to Determine Compensation Due, at 2, 6 (A2, A6). "At the time of the work accident, Claimant's average weekly wage was $2,073.14, yielding a weekly compensation rate of $679.63." *Id.* at 2 (A2).

[11] Decision on Petition to Determine Compensation Due, at 2 (A2).

[12] *Id.*

3

ankle.[13]   After the parties entered into the agreement, Claimant withdrew his petition.[14]

On July 20, 2016, Employer filed a Petition for Review, seeking to end Claimant's total disability benefits.[15]  On August 9, 2016, Claimant filed a Petition to Determine Additional Compensation Due, seeking acknowledgement of injuries to his right knee and lumbar spine—injuries that Employer did not deem compensable in the parties' agreement.[16]  The parties later resolved Employer's petition, so the Board considered only Claimant's petition at the March 23, 2017 hearing.[17]

On August 15, 2017, the Board issued its post-hearing decision.[18]  It found that the work accident had caused Claimant's right knee and lumbar spine injuries.[19] One of the Board's findings was that Claimant's work accident had, among other things, "aggravated Claimant's preexisting lumbar spine condition to include the L3-4 herniated disk and the extruded fragment."[20]  The Board concluded that Claimant was entitled to compensation for medical expenses.[21]

---

[13] *Id.*
[14] *Id.*
[15] *Id.*
[16] *Id.*
[17] *Id.*
[18] *Id.* at 32 (A32).
[19] *Id.*
[20] *Id.*
[21] *Id.*

4

Before the Board issued its August 15, 2017 decision, Claimant had lumbar fusion surgery (which turned out to be compensable).[22] After that surgery, new medical issues arose. These developments prompted Claimant to file two more petitions, which he did on April 4, 2019.

## 2. Claimant's April 4, 2019 Petitions

The petitions in question were a Petition for Disfigurement and another Petition for Determination of Additional Compensation Due.[23] In his petitions, Claimant sought, among other things, "an acknowledgement of the compensability of injuries/ongoing conditions involving the rectum" and "permanent impairment benefits regarding the . . . rectum."[24] On September 27, 2019, the Board held a hearing on Claimant's petitions.[25]

With respect to Claimant's rectal and bowel issues, the Board relied on testimony from the following sources: (1) Dr. Peter Bandera, a physician board certified in physical medicine and rehabilitation, who testified by deposition on Claimant's behalf; (2) Dr. Michael Sugarman, a neurosurgeon who testified by deposition on Claimant's behalf; (3) Claimant, who testified on his own behalf; and

---

[22] Decision on Petition for DACD, at 4 (A89).
[23] *Id.* at 2 (A87).
[24] *Id.* (footnote omitted).
[25] *Id.*

5

(4) Dr. Jeffrey Meyers, a physician board certified in physical medicine and rehabilitation who testified by deposition on Employer's behalf.[26]

In the instant appeal, only certain portions of Dr. Bandera's and Dr. Meyers's testimony are at issue.[27] Consequently, the Court will not discuss portions of Dr. Bandera's and Dr. Meyers's testimony that the parties do not reference in their briefing, and the Court will not discuss any of Dr. Sugarman's or Claimant's testimony.[28]

### 3. Dr. Bandera's Testimony

The Board summarized Dr. Bandera's testimony about Claimant's rectal issues as follows. On June 20, 2016, Claimant had lumbar fusion surgery at Riddle Memorial Hospital.[29] He remained at the hospital until June 23, 2016, when he was discharged.[30] On June 24, 2016, Claimant returned to the hospital, and a report taken that day stated that Claimant had made two bowel movements before arriving at the hospital.[31] While at the hospital, Claimant received a rectal exam, which turned up positive for external hemorrhoids.[32]

---

[26] *Id.* at 3, 9, 15 (A88, A94, A100).
[27] *See generally* Opening Brief (Trans. ID. 65927833); Answering Brief (Trans. ID. 65990099); Reply Brief (Trans. ID. 65999362).
[28] Indeed, the Court has not been provided with Dr. Sugarman's or Claimant's testimony.
[29] Decision on Petition for DACD, at 4 (A89); Dr. Bandera Dep., at 28:15–22 (A40).
[30] Decision on Petition for DACD, at 4 (A89); Dr. Bandera Dep., at 28:22–34 (A40).
[31] Decision on Petition for DACD, at 4 (A89); Dr. Bandera Dep., at 34:10–14, 35:9–13 (A42).
[32] Decision on Petition for DACD, at 5 (A90); Dr. Bandera Dep., at 35:23–36:2 (A42).

On June 25, 2016, Claimant again returned to the Riddle Memorial Hospital.[33] A record dated that day noted that Claimant was experiencing rectal bleeding and pain, constipation, nausea and cramping, and abdominal pain—symptoms that Claimant had never experienced.[34] Later in the record, there is an entry stating that Claimant had visited the emergency room the previous night (i.e., June 24, 2016) and was told that he had a prolapsed rectum, which would require follow-up surgery.[35] A surgical note from Claimant's June 25, 2016 hospital visit stated that Claimant was referred because of a rectal prolapse.[36] The subjective section of that note stated that Claimant had experienced two days of rectal pain and blood spotting from the rectum.[37] Claimant experienced pain because he was straining to have

---

[33] Decision on Petition for DACD, at 5 (A90); Dr. Bandera Dep., at 38:16–19 (A43).

[34] Decision on Petition for DACD, at 5 (A90); Dr. Bandera Dep., at 38:19–39:6 (A43).

[35] Decision on Petition for DACD, at 5 (A90); Dr. Bandera Dep., at 39:14–21 (A43).

[36] The Board discusses this note in connection with Claimant's June 26, 2016 visit to Jefferson University Hospital. *See* Decision on Petition for DACD, at 5 (emphasis added) ("Claimant had surgery on *June 26, 2016*. Under 'reason for referral,' the surgical note indicates 'rectal prolapse.'") (A90). But according to Dr. Bandera's deposition, the note appears to have been made at Riddle Memorial Hospital on June 25, 2016. *See* Dr. Bandera Dep., at 38:16–18 (emphasis added) ("Q. I would next like to turn to a record from . . . *June 25, 2016*, Riddle Memorial Hospital.") (A43); *id.* at 40:5–10 (emphasis added) ("Q. And I think I've tabbed off the next page I want you to turn to *from the same record*. . . . Will you read what's written under reason for referral? A. Rectal prolapse.") (A43). The June 26, 2016 surgery at Jefferson University Hospital is not referenced until page 41 of the deposition. Dr. Bandera Dep., at 41:23–42:9 (emphasis added) ("Q. The *next record* I want to turn to is from Jefferson Hospital. . . . [I]t shows an admission date of June 26, 2016 and a discharge date of June 28, 2016. . . . And the discharge papers list the problem as rectal prolapse and procedure as hemorrhoidectomy. Is that correct? A. Yes.") (A44).

[37] Decision on Petition for DACD, at 5 (A90); Dr. Bandera Dep., at 40:11–15 (A43).

7

bowel movements, and Preparation H did not help.[38] The surgical note reported that Claimant had never had hemorrhoids or bowel movement issues prior to June 2016.[39]

On June 26, 2016, Claimant had surgery at Jefferson University Hospital.[40] The discharge paperwork identified Claimant's problem as a rectal prolapse and the procedure as a hemorrhoidectomy.[41] A month after the surgery, Claimant visited Dr. Murphy, who prescribed Claimant a stool softener.[42]

During his testimony, Dr. Bandera discussed the causes of a rectal prolapse. He stated that narcotic medications, anesthesia, and dehydration accompanying surgery can slow down the intestine's motility.[43] This slowing down may cause a person to have to bear down harder during constipation.[44] Relatedly, a person may have to bear down harder when struggling to pass urine, as Claimant was.[45] According to Dr. Bandera, all of this bearing down can cause a rectal prolapse.[46] Dr. Bandera opined that Claimant had to bear down very hard to produce 800 cubic centimeters of urine upon request at his June 24, 2016 hospital visit.[47]

---

[38] Decision on Petition for DACD, at 5 (A90); Dr. Bandera Dep., at 40:15–20 (A43).
[39] Decision on Petition for DACD, at 5 (A90); Dr. Bandera Dep., at 40:22–41:1 (A43–44).
[40] Decision on Petition for DACD, at 5–6 (A90–A91); Dr. Bandera Dep., at 41:23–42:9 (A44).
[41] Decision on Petition for DACD, at 5–6 (A90–A91); Dr. Bandera Dep., at 42:5–9 (A44).
[42] Decision on Petition for DACD, at 6 (A91); Dr. Bandera Dep., at 43:22–44:1, 44:6–16 (A44).
[43] Decision on Petition for DACD, at 6 (A91); Dr. Bandera Dep., at 46:21–47:10 (A45).
[44] Decision on Petition for DACD, at 6 (A91); Dr. Bandera Dep., at 47:1–22 (A45).
[45] Decision on Petition for DACD, at 5–6 (A90–A91); Dr. Bandera Dep., at 34:24–35:6, 48:24–49:11 (A42, A45–A46).
[46] Decision on Petition for DACD, at 6 (A91); Dr. Bandera Dep., at 47:20–23 (A45).
[47] Decision on Petition for DACD, at 4–6 (A89–A91); Dr. Bandera Dep., at 34:10–12, 35:16–18, 49:13–16 (A42, A46).

8

On the issue of causation, Dr. Bandera concluded that Claimant's work injury caused the rectal issues.[48] He based that conclusion partly on that fact that the rectal issues developed close in time to the work injury.[49] He also cited the known and accepted reasons for rectal prolapse: anesthesia, narcotics, surgery, and urine backup in the bladder—all of which would have affected the rectum, making Claimant have to bear down hard, and ultimately causing Claimant's rectal wall to collapse.[50]

On the issue of permanency, Dr. Bandera assigned Claimant's rectal issues a 35% permanent impairment rating using Table 6-4 of the Fifth Edition of the AMA Guides to the Evaluation of Permanent Impairment (the "AMA Guides").[51] Dr. Bandera concluded that Claimant's rectal issues qualified for "Class [2] with objective evidence of colon or rectal disease or anatomic loss or alteration."[52] Dr. Bandera based his conclusion on his visual diagnosis of Claimant and the fact that Claimant had undergone surgery.[53] Dr. Bandera also opined that Claimant satisfied the other criteria listed in Class 2: much more than mild gastrointestinal symptoms,

---

[48] Decision on Petition for DACD, at 6 (A91); Dr. Bandera Dep., at 50:13–16 (A46).
[49] Decision on Petition for DACD, at 6 (A91); Dr. Bandera Dep., at 50:19–22 (A46).
[50] Decision on Petition for DACD, at 6 (A91); Dr. Bandera Dep., at 50:23–51:8 (A46).
[51] Decision on Petition for DACD, at 6 (A91); Dr. Bandera Dep., at 51:19–22 (A46). Claimant attached a copy of Table 6-4 to his motion for reargument. *See* Claimant's Motion for Reargument of Board Decision, Exhibit 1 (A124).
[52] Decision on Petition for DACD, at 6 (A91); Dr. Bandera Dep., at 51:23–52:3 (A46). The Courts notes the spelling error in Dr. Bandera's deposition transcript. Dr. Bandera Dep., at 52:3 (A46).
[53] Decision on Petition for DACD, at 6 (A91); Dr. Bandera Dep., at 52:3–5 (A46).

ongoing problems with bowel functioning, minimal dietary restrictions, and mild symptomatic therapy might have been necessary.[54]

On cross-examination, Dr. Bandera acknowledged that the Jefferson University Hospital staff had diagnosed Claimant with hemorrhoids, performed a hemorrhoidectomy, and referenced a rectal prolapse in their record of Claimant's visit.[55] He also admitted that Claimant had not had any formal treatment for his rectal prolapse since the Jefferson University Hospital hemorrhoidectomy.[56] Dr. Bandera opined that the hemorrhoidectomy had repaired Claimant's rectal prolapse but did not solve all of Claimant's rectal and bowel issues.[57] When Dr. Bandera met with Claimant, Claimant reported bowel movements of up to 12 times a day.[58] With respect to that issue, Dr. Bandera opined that dietary modification would be the appropriate treatment.[59] Although Dr. Bandera did not know whether Claimant had undergone that treatment, he knew that Claimant was not seeing a physician for the excessive-bowel-movement issue.[60]

4. Dr. Meyers's Testimony

---

[54] Decision on Petition for DACD, at 6–7 (A91–92); Dr. Bandera Dep., at 52:6–17 (A46).
[55] Decision on Petition for DACD, at 8 (A93); Dr. Bandera Dep., at 66:16–67:3 (A50).
[56] Decision on Petition for DACD, at 8 (A93); Dr. Bandera Dep., at 68:6–15 (A50).
[57] Decision on Petition for DACD, at 8 (A93); Dr. Bandera Dep., at 67:4–13 (A50).
[58] Decision on Petition for DACD, at 8 (A93); Dr. Bandera Dep., at 67:4–10 (A50).
[59] Decision on Petition for DACD, at 8 (A93); Dr. Bandera Dep., at 68:20–69:1 (A50–A51).
[60] Decision on Petition for DACD, at 8 (A93); Dr. Bandera Dep., at 68:20–69:7 (A50–A51).

The Board summarized Dr. Meyers's testimony about Claimant's rectal issues as follows. On December 5, 2018, Dr. Meyers examined Claimant.[61] Claimant told Dr. Meyers that he had problems with his anal sphincter and that he had been experiencing diarrhea 10–12 times per day.[62] Reviewing Claimant's medical records, Dr. Meyers noted that Dr. Murphy had seen Claimant before and after Claimant's work accident.[63] According to Dr. Meyers, Dr. Murphy's records from around the time of Claimant's rectal surgery did not reference any bowel issues.[64] Nor did they indicate any positive findings for bowel issues when Dr. Murphy conducted a review of systems.[65]

Although Dr. Murphy provided Claimant with Colace (a stool softener) to address Claimant's post-surgery constipation, there was no record that Claimant was experiencing diarrhea or that he had any other bowel complaints after the perioperative period.[66] In fact, Dr. Meyers observed, the records showed that Claimant had not followed up with any medical professional about any rectal or bowel issues outside of the first two months after surgery.[67] Dr. Meyers noted that

---

[61] Decision on Petition for DACD, at 15 (A100); Dr. Meyers Dep., at 8:14–18 (A61).

[62] Decision on Petition for DACD, at 15 (A100); Dr. Meyers Dep., at 11:17–23 (A62).

[63] Decision on Petition for DACD, at 16 (A101); Dr. Meyers Dep., at 20:23–21:2, 21:20–23 (A64–A65).

[64] Decision on Petition for DACD, at 16 (A101); Dr. Meyers Dep., at 22:4–12 (A65).

[65] Decision on Petition for DACD, at 16 (A101); Dr. Meyers Dep., at 22:13–16 (A65).

[66] Decision on Petition for DACD, at 16 (A101); Dr. Meyers Dep., at 22:16–21 (A65).

[67] Decision on Petition for DACD, at 16 (A101); Dr. Meyers Dep., at 24:7–10 (A65).

11

Claimant had actually denied a change in his bowel habits during a May 25, 2017 cardiology assessment.[68]

On the issue of causation, Dr. Meyers concluded that the work accident did not cause Claimant's rectal issues.[69] According to Dr. Meyers, a rectal prolapse does not occur after one incident; it tends to develop gradually and is usually seen in older patients and/or patients with chronic constipation or hemorrhoids.[70] Despite Claimant's constipation—an expected side effect of narcotics and anesthesia—Dr. Meyers opined that Claimant did not have the typical history of someone who develops a rectal prolapse.[71] Also, Dr. Meyers noted that Claimant was given a stool softener after his surgery to help him make bowel movements; more recently, however, Claimant complained of the opposite kind of issues: diarrhea and excessive bowel movements.[72] To Dr. Meyers, this reversal suggested that Claimant's newer symptoms had some cause other than the work accident.[73] Dr. Meyers also observed that there were no medical documents reporting excessive bowel movements, diarrhea, or dietary changes.[74] Dr. Meyers further testified that Claimant's post-surgery constipation healed within the normal time frame—within

---

[68] Decision on Petition for DACD, at 18 (A103); Dr. Meyers Dep., at 61:15–19 (A75).
[69] Decision on Petition for DACD, at 18 (A103); Dr. Meyers Dep., at 37:11–15 (A69).
[70] Decision on Petition for DACD, at 18 (A103); Dr. Meyers Dep., at 37:15–24 (A69).
[71] Decision on Petition for DACD, at 18 (A103); Dr. Meyers Dep., at 38:1–11 (A69).
[72] Decision on Petition for DACD, at 18 (A103); Dr. Meyers Dep., at 40:4–13, 40:19–23 (A69).
[73] Decision on Petition for DACD, at 18 (A103); Dr. Meyers Dep., at 40:23–41:1 (A69–70).
[74] Decision on Petition for DACD, at 18 (A103); Dr. Meyers Dep., at 41:22–42:1 (A70).

about a month.[75] Dr. Meyers opined that Claimant's hemorrhoid and rectal prolapse must have healed as well because there were no records of any follow-up treatment after Claimant's procedures.[76]

### 5. The Board's Findings of Fact and Conclusions of Law

In its February 7, 2020 decision, the Board found that the work accident caused Claimant's rectal issues.[77] The Board was persuaded by Dr. Bandera's opinion on this point.[78] The Board also found that Claimant's treatment for the rectal issues was compensable—including the June 26, 2016 rectal prolapse/hemorrhoidectomy.[79] Yet the Board agreed with Dr. Meyers that Claimant's rectal issues were not ongoing, and for that reason, the Board refused to award Claimant with permanent impairment benefits.[80]

The Board did so because it was persuaded by three of Dr. Meyers's observations. First, Dr. Meyers noted that Claimant's post-surgery medical records contained no complaints about bowel or rectal issues and that, in one record, Claimant actually denied change in his bowel habits.[81] Second, Dr. Meyers found no records showing any formal treatment for rectal issues after Claimant's rectal

---

[75] Decision on Petition for DACD, at 19 (A104); Dr. Meyers Dep., at 39:7–13 (A69).
[76] Decision on Petition for DACD, at 19 (A104); Dr. Meyers Dep., at 39:13–21 (A69).
[77] *See* Decision on Petition for DACD, at 24 (A109).
[78] *Id.*
[79] *Id.*
[80] *Id.* at 24–25 (A109–A110).
[81] *Id.* at 26–27 (A111–A112).

13

prolapse procedure.[82] Dr. Meyers inferred from the lack of follow-up treatment that Claimant's rectal prolapse/hemorrhoids had resolved.[83] And third, Dr. Meyers testified that Claimant's bowel issues appeared to reverse over time; whereas Claimant experienced post-surgery constipation, his more recent issue was too many bowel movements.[84] There was no indication that Claimant had sought to remedy his bowel issues with dietary treatment, which would have been the appropriate treatment.[85]

The Board thus concluded:

> [A]ny such outstanding treatment for bowel/rectal issues for two months following the June 20, 2016 [lumbar fusion] surgery is compensable. This includes the June 26, 2016 rectal prolapse/hemorrhoidectomy procedure(s). However, any treatment after that period of time is not found to casually relate to the August 2015 work incident. Further, having not found an ongoing condition in terms of causation in this regard, the Board also declines to grant permanent impairment benefits regarding the rectum/bowels.[86]

Importantly for this appeal, the Board also dropped a footnote stating that Claimant's compensable medical expenses "shall be paid by Employer according to the fee schedule under title 19 of the *Delaware Code*, section 2322B."[87]

---

[82] *Id.* at 26 (A111).
[83] *Id.*
[84] *Id.*
[85] *Id.*
[86] *Id.* at 27 (A112) (footnotes omitted).
[87] *Id.* at 27 n.13 (A112).

## B. The Board's April 29, 2020 Order

### 1. Claimant Moves for Reargument

On March 2, 2020, Claimant moved for reargument on two aspects of the Board's February 7, 2020 decision: (1) the Board's refusal to award permanent impairment benefits for Claimant's rectal issues and (2) the Board's requirement that Employer compensate Claimant for his medical expenses according to the fee schedule.[88]

As for the first issue, Claimant noted that Dr. Bandera and Dr. Meyers had each found some degree of permanent impairment—35% and 13%, respectively—using the Table 6-4 of the AMA Guides.[89] So, Claimant argued, the Board also had to find some degree of permanent impairment, and that finding had to accord with the experts' findings.[90] Claimant suggested that the Board should adopt Dr. Bandera's rating because the Board favored Dr. Bandera's opinion on causation.[91]

Claimant also argued that the Delaware Workers' Compensation Act entitled him to permanent impairment benefits.[92] He noted that 19 *Del. C.* §

---

[88] Claimant's Motion for Reargument of Board Decision, at ¶¶ 4, 9 (A119, A121).

[89] *Id.* at ¶¶ 4–5 (A119–A120) (citations and footnotes omitted). In its February 7, 2020 decision, the Board did not reference the 13% impairment rating that Dr. Meyers assigned to Claimant's rectal issues, so the Court did not do so above.

[90] *Id.*

[91] *Id.* at ¶ 7 (A120).

[92] *Id.* at ¶ 5 n.2 (A120).

15

2326(g) provides for "proper and equitable compensation for the <u>loss</u> of any member <u>or part</u> of the body."[93] Claimant thus concluded that he was entitled to permanent impairment damages simply because he suffered anatomic loss or alteration—and despite the Board's finding that his rectal symptoms were not ongoing.[94]

Lastly, Claimant argued that whether he had ongoing symptoms was similarly irrelevant under Class 2 in Table 6-4 of the AMA Guides.[95] This was so, Claimant contended, because Class 2 is "largely a surgical category"[96] whose primary criteria is "objective evidence of colonic or rectal disease or anatomic loss or alteration."[97] He noted that both experts agreed that Claimant qualified for Class 2.[98]

Claimant then moved onto the fee schedule issue. He began by noting that Employer had denied the compensability of nearly all of his injuries and medical treatment.[99] For that reason, Claimant had to pay for most of his treatment using spouse's health insurance, which costed him much more than

---

[93] *Id.* (emphasis supplied by Claimant) (quoting 19 *Del. C.* § 2326(g)).
[94] *See id.* at ¶ 5 (A120) (footnote and citations omitted).
[95] *Id.* at ¶ 8 (A120).
[96] *Id.* Claimant borrows "surgical category" from Dr. Bandera's testimony: "But again I want to highlight this issue that since he already completed surgery, that well qualifies him for [Class 2] . . . . That is a *surgical category*." Dr. Bandera Dep., at 74:20–75:1 (emphasis added) (A52).
[97] *Id.* at ¶ 8 (quoting Class 2, Table 6-4 of the AMA Guides (A124)) (A120).
[98] *Id.*
[99] *Id.* ¶ 9 (citations and footnote omitted) (A121).

16

he was going to receive under the fee schedule.[100] Claimant conceded that he had not raised this issue before the Board.[101] Still, Claimant maintained that it was appropriate to raise it on reargument because he believed that the Board's February 7, 2020 decision contained language limiting his recovery rights against Employer.[102]

Claimant's argument for additional compensation invoked the collateral source rule and 19 *Del. C.* § 2322(b).[103] Claimant asserted that Delaware had adopted the collateral source rule and had applied it in workers' compensation cases.[104] According to Claimant, the collateral source rule prevents an employer from mitigating the amount it owes a claimant simply because the claimant received compensation from an independent source.[105] Claimant further argued that, pursuant to § 2322(b), when an employer knows of a claimant's injuries in advance, it must reimburse the claimant for all compensable medical expenses that claimant incurred to treat the injuries.[106] Claimant asked the Board to modify its decision to accord with these rules— or at least to omit any reference to the fee schedule.[107]

---

[100] *Id.* at ¶¶ 3, 10 (A119, A121).
[101] *Id.* at ¶ 11 (A121).
[102] *Id.* (citing 19 *Del. C.* § 2322B).
[103] *See id.* at ¶¶ 12–15 (citations omitted).
[104] *Id.* at ¶¶ 12–13 (citations omitted).
[105] *Id.* (citations omitted).
[106] *Id.* at ¶ 14 (citations omitted).
[107] *Id.* at ¶ 17 & n.6 (A122).

## 2. Employer's Response

Regarding the permanent impairment issue, Employer asserted that the Board has the ultimate authority to decide whether permanent impairment exists.[108] No other authority can bind the Board's decision.[109]

Regarding the fee schedule issue, Employer noted that Claimant did not present the issue at the hearing.[110] Also, Employer argued that because the work accident occurred in 2015, the fee schedule governs the payment of any compensable medical expenses.[111]

## 3. The Board's Order

As for the first issue, the Board summarized Claimant's argument as follows: the Board *must* assign a permanent impairment rating between 13% and 35% because (1) both Dr. Bandera and Dr. Meyers agreed that a permanent impairment rating was due and (2) Claimant's anatomy had been permanently altered by the rectal prolapse surgery.[112] Ultimately, the Board affirmed its previous decision to deny Claimant any permanent impairment benefits.[113]

---

[108] Order on Claimant's Motion for Reargument, at 3 (A128).
[109] *See id.*
[110] *Id.* (footnote omitted).
[111] *Id.*
[112] *Id.* at 3–4 (A128–A129).
[113] *Id.* at 4 (A129).

18

To begin, the Board disputed Claimant's assertion that Dr. Bandera based his rating on the sole fact that Claimant had surgery.[114] According to the Board, Dr. Bandera also took into account the other criteria listed in Class 2 of Table 6-4.[115] Those criteria were Claimant's gastrointestinal complaints of ongoing bowel issues, Claimant's diet restrictions, and the possibility that Claimant might have needed mild therapy.[116]

Yet the Board was persuaded that Dr. Meyers's observations undermined Dr. Bandera's analysis of these criteria.[117] The Board again listed those observations: (1) Claimant's work accident-related rectal issues had apparently resolved,[118] (2) Claimant's more recent bowel were the opposite of Claimant's post-surgery bowel issues,[119] and (3) nothing in the medical records showed any follow-up treatment or subsequent complaints about rectal or bowel issues.[120] Concluding that Dr. Meyers's testimony had negated Dr. Banderas's findings of ongoing symptoms, the Board declared that Claimant had "to show something beyond just having had a surgical

---

[114] *Id.*

[115] *Id.* (footnote omitted). The Board noted that even if a *medical expert* were to assign a rating based solely on surgical alteration (i.e., without also considering ongoing conditions or symptoms), "to *the Board*, Claimant's symptoms and experiences as a result of the rectal condition are of the utmost significance in making a determination as to whether a permanent impairment award is due." *Id.* at 4 n.6 (emphasis added) (A129).

[116] *Id.* at 4–5 (A129–A130).

[117] *Id.* at 5 (A130).

[118] *Id.*

[119] *Id.* at 5 & n.7 (A130).

[120] *Id.* at 5 (A130).

procedure involving the rectum three or more years ago with no treatment or complaints document afterward."[121]

As it did with Dr. Bandera's 35% rating, the Board denied that Dr. Meyers's 13% rating was based solely on the surgical alteration of Claimant's anatomy.[122] It could not have been, the Board reasoned, because Class 2 is not merely a "surgical category."[123] To show why, the Board quoted the criteria in Class 2 in Table 6-4 of the AMA Guides and explained that "this rating includes not just a surgical alteration of Claimant's rectal anatomy but also . . . subjective gastrointestinal symptoms and bowel disturbance complaints" and "other criteria."[124]

Ultimately, the Board decided not to adopt even Dr. Meyers's 13% rating.[125] It found that this rating "was based on subjective symptoms that Dr. Meyers (and the Board) were [sic] not convinced casually related to the industrial accident."[126] The Board thus concluded: "Both of the medical experts' opinions regarding degree of permanent impairment were—at least in part—based on symptoms that the Board was not convinced casually relate to the original work accident and/or June 2016

---

[121] *Id.*
[122] *Id.* at 6 (A131).
[123] *Id.*
[124] *Id.* (quoting Class 2, Table 6-4 of the AMA Guides (A124)).
[125] *Id.* at 7 (A132).
[126] *Id.*

surgical procedures."[127]  Accordingly, the Board denied Claimant's request for permanent impairment benefits for his rectal issues.[128]

The Board then turned to the second issue—the fee schedule.[129]  The Board noted that the fee schedule applies to all treatment covered under the Delaware Workers' Compensation Act that was provided on or after May 23, 2008.[130]  Because Claimant's work accident was in August 2015, the Board reasoned, the fee schedule necessarily applied to all of Claimant's covered treatment.[131]  The Board also commented that the fee schedule issue was not truly a "reargument" because Claimant did not raise it at the hearing.[132]  Claimant did not inform the Board that any of his medical expenses had been paid for, nor did he specify the rate at which they were paid.[133]  So the  Board directed Employer to compensate Claimant pursuant to the fee schedule.[134]  Accordingly, the Board affirmed its previous decision and denied Claimant's request to omit references to the fee schedule.[135]

### III. PARTIES' CONTENTIONS

#### A. Permanent Impairment Benefits

---

[127] *Id.* (footnote omitted).
[128] *Id.*
[129] *Id.* at 8 (A133).
[130] *Id.*
[131] *Id.*
[132] *Id.*
[133] *Id.*
[134] *Id.*
[135] *Id.*

### 1. Claimant's Arguments

Claimant first argues that, contrary to the Board's conclusion, whether he suffers from an ongoing condition is irrelevant.[136] He avers that 19 *Del. C.* § 2326(g) of the Workers' Compensation Act simply provides that "[t]he Board shall award proper and equitable compensation for the loss of any member or part of the body."[137] To further support his point, Claimant notes that in *Chrysler Corp. v. Chambers*, the Superior Court affirmed the Board's award of compensation under § 2326(g) for a surgically removed testicle despite no ongoing medical impact.[138] In the same way, Claimant asserts that he should be compensated under § 2326(g) for his rectum's anatomic loss/alteration despite no ongoing condition.[139]

Next, Claimant argues that the board erred by finding that Dr. Meyers based his rating in part on Claimant's subjective complaints.[140] In Claimant's view, Dr. Meyers based his rating entirely on the anatomic loss or alteration to Claimant's rectum.[141] After all, Claimant reasons, Dr. Meyers did not opined that Claimant's complaints did not relate to the work accident, so they would not have factored into Dr. Meyers's permanent impairment rating.[142]

---

[136] Opening Brief, at 15 (Trans. ID. 65927833).
[137] *Id.* (emphasis supplied by Claimant) (quoting 19 *Del. C.* § 2326(g)).
[138] *Id.* at 16 (quoting *Chrysler Corp. v. Chambers*, 288 A.2d 450, 452 (Del. Super. Ct. 1972), *aff'd*, 299 A.2d 431 (Del. 1972)).
[139] *Id.* (footnote and citation omitted).
[140] *Id.* at 17 (footnote omitted).
[141] *Id.*
[142] *Id.* at 19–20 (footnote omitted).

22

Claimant also argues that the Board wrongly denied Claimant permanent impairment benefits by independently determining that Class 2 is not a surgical category.[143] According to Claimant, the Board read the criteria in Class 2 as conjunctive elements, which, in Claimant's view, contradicts the experts' understanding of those criteria.[144] For example, Claimant argues that if the criteria in Class 2 were truly conjunctive elements, then Dr. Meyers would not have placed Claimant in Class 2 because he denied that Claimant met any criteria other than loss or alteration.[145] More generally, Claimant contends that the Board does not have the expertise to independently interpret and apply the AMA Guides; it must rely on the experts.[146]

Claimant further argues that the Board erred as a matter of law in determining that it "*may* award compensation based on the loss or loss of use of any body part of the claimant's body."[147] Claimant asserts that the Board has no such discretion.[148]

Claimant's last argument is that the Board failed to articulate a factual basis for deviating from the experts' ratings.[149] In Claimant's view, the Board's authority to fix an impairment percentage does not relieve the Board of its obligation to

---

[143] *Id.* at 20 (quoting Order on Claimant's Motion for Reargument, at 6 (A131)).
[144] *See id.* at 20–21 (citation omitted).
[145] *Id.* at 21 (quoting Dr. Meyers Dep., at 52:2–24 (A72)).
[146] *See id.* at 21–22 (citations omitted).
[147] *Id.* at 22 (emphasis supplied by the Board) (internal quotation marks omitted) (quoting Order on Claimant's Motion for Reargument, at 4 n.6 (A129)).
[148] *Id.* at 22–23.
[149] *Id.* at 23.

explain itself when its percentage differs from those of the experts.[150] Claimant insists that the Board did not do so here.[151]

### 2. Employer's Responses

Employer argues that the Board properly denied Claimant any permanent impairment benefits.[152] According to Employer, Claimant is not entitled to permanent impairment benefits simply because he had rectal prolapse surgery.[153] Employer also contends that the Board correctly read Class 2's criteria as a set of conjunctive elements.[154] So, in Employer's view, the Board properly refused to award permanent impairment benefits when it found the evidence lacking for some of the criteria.[155] Employer therefore argues that the Board engaged in a reasoned decision-making process.[156]

### B. Fee Schedule

### 1. Claimant's Arguments

Claimant continues to argue for application of the collateral source rule and 19 *Del. C.* § 2322(b) of the Workers' Compensation Act.[157] He contends that

---

[150] *Id.*

[151] *Id.* at 23–24.

[152] Answering Brief, at 10 (Trans. ID. 65990099).

[153] *Id.* at 10.

[154] *Id.* at 10–11.

[155] *Id.* at 11.

[156] *Id.* at 11–12.

[157] Opening Brief, at 26–31 (citations omitted) (Trans. ID. 65927833). 19 *Del. C.* § 2322(b) provides: "If the employer, upon application made to the employer, refuses to furnish the services, medicines and supplies mentioned in subsection (a) of this section, the employee may procure the

24

Delaware courts have applied the collateral source rule in workers' compensation cases to (1) prevent employers from receiving windfalls, (2) facilitate prompt payment of medical expenses, and (3) accord with 19 *Del. C.* § 2322(b).[158] Following the decisions that articulated these rationale, Delaware enacted the fee schedule at issue.[159]

Claimant notes that whether the fee schedule affects the viability of collateral source rule or 19 *Del. C.* § 2322(b) is a matter of first impression.[160] For his part, Claimant submits that it does not.[161] He argues that when Delaware's General Assembly passed the fee schedule, it could have—but did not—abrogate § 2322(b), and it has not amended § 2322(b) since the fee schedule was enacted.[162]

2. Employer's Responses

Employer argues that the fee schedule issue is not properly before the Court on this appeal.[163] It bases this contention on the Delaware Supreme Court Rule 8, which provides, "Only questions fairly presented to the trial court may be presented for review; provided, however, that when the interests of justice so require, the Court

same and shall receive from the employer the reasonable cost thereof within the above limitations."
19 *Del. C.* § 2322(b). The thrust of this section, according to Claimant, is to protect "the rights of injured claimants who, as a result of an employer's denial, are forced to pay, or otherwise assume liability, for compensable medical expenses." Opening Brief, at 29 (Trans. ID. 65927833).
[158] Opening Brief, at 27–28 (citations omitted) (Trans. ID. 65927833).
[159] *Id.* 28–29 (quoting 11 Del. Reg. Regs. 1337 (Apr. 1, 2008)).
[160] *Id.* at 29; Reply Brief, at 6–7 (Trans. ID. 65999362).
[161] Opening Brief, at 29 (Trans. ID. 65927833).
[162] *Id.*
[163] Answering Brief, at 15 (Trans. ID. 65990099).

may consider and determine any question not so presented."[164] Employer maintains that the interests of justice do not require the Court to hear the fee schedule issue because Claimant could have raised the issue at the hearing but failed to do so.[165] Employer also notes that Claimant has filed a concurrent *Huffman* action against Employer demanding payment of medical expenses.[166]

## IV. STANDARD OF REVIEW

When reviewing an appeal from a decision of the Board, the Court's role is limited to determining whether the decision is free of legal error and supported by substantial evidence.[167] "Substantial evidence" is less than a preponderance of the evidence but more than a "mere scintilla."[168] Specifically, substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[169] The Court may not "weigh the evidence, determine questions of credibility, or make its own factual findings."[170]

---

[164] *Id.* at 14 (quoting Del. Sup. Ct. R. 8).
[165] *Id.* at 15.
[166] *Id.* (citing Richard Quaile v. National Tire & Battery, No. N20C-07-242 MAA). Claimant denies that his *Huffman* action relates to the instant appeal. Reply Brief, at 6 n.2 (Trans. ID. 65999362).
[167] *Standard Distrib. v. Hall*, 897 A.2d 155, 157 (Del. 2006).
[168] *State v. Dalton*, 878 A.2d 451, 454 (Del. 2005) (citation omitted).
[169] *Washington v. Del. Transit Corp.*, 226 A.3d 202, 210 (Del. 2020) (internal quotation marks omitted) (quoting *Powell v. OTAC, Inc.*, 2019 WL 6521980, at *4 (Del. Dec. 4, 2019)).
[170] *Powell v. OTAC, Inc.*, 223 A.3d 864, 870 (Del. 2019) (internal quotation marks omitted) (quoting *Person-Gaines v. Pepco Holdings, Inc.*, 981 A.2d 1159, 1161 (Del. 2009)).

When a factual determination is at issue on an appeal, the Court must take "due account of the Board's experience and specialized competence."[171] The Court "will not substitute its judgment for that of an administrative body where there is substantial evidence to support the decision and subordinate findings of the agency."[172] Further, the Board's discretionary rulings "will not be disturbed on appeal unless [they are] based on clearly unreasonable or capricious grounds."[173] The Court reviews legal issues *de novo*.[174]

## V. DISCUSSION

### A. Permanent Impairment Benefits

1. The Board's decision not to award Claimant permanent impairment benefits pursuant to the AMA Guides was supported by substantial evidence.

The Board noted that "Dr. Meyers rated Claimant's rectum at 13 percent impairment . . . in Class 2."[175] The Board acknowledged Claimant's position that Dr. Meyers based his rating "on the surgery/alteration of anatomy alone," but the

---

[171] *Spellman v. Christiana Care Health Servs.*, 74 A.3d 619, 623 (Del. 2013) (citing 29 *Del. C.* § 10142(d)).

[172] *Hellstern v. Culinary Servs. Grp.*, 2019 WL 460309, at *10 (Del. Super. Ct. 2019) (quoting *Christiana Care Health Sys., VNA v. Taggart*, 2004 WL 692640, at *10 (Del. Super. 2004)).

[173] *Id.* (quoting *Christiana Care Health Sys., VNA v. Taggart*, 2004 WL 692640, at *10 (Del. Super. 2004)).

[174] *LeVan v. Independence Mall, Inc.*, 940 A.2d 929, 932 (Del. 2007).

[175] Order on Claimant's Motion for Reargument, at 6 (A131).

27

Board disagreed.[176] To explain why, the Board first quoted the Class 2 criteria listed in Table 6-4 of the AMA Guides:

> Objective evidence of colonic or rectal disease or anatomic loss or alteration **and** mild gastrointestinal symptoms with occasional disturbances of bowel function, accompanied by moderate pain **and** minimal restriction of diet or mild symptomatic therapy may be necessary **and** no impairment of nutrition results.[177]

The Board then stated that "this rating includes *not just* a surgical alteration of Claimant's rectal anatomy *but also* . . . subjective gastrointestinal symptoms and bowel disturbance complaints" and "other criteria."[178]

Next, the Board recited the portions of Dr. Meyers's testimony that it found persuasive: (1) "there had been no rectal treatment or complaints for three years prior," (2) "there were records indicating that Claimant denied having any bowel changes," and (3) "Claimant's more current bowel complaints were different [from] and opposite to the symptoms associated with the June 2016 surgical procedure."[179] Despite agreeing with Dr. Meyers's observations, however, the Board deviated from Dr. Meyers's conclusion.[180] The Board "elected not to award 13 percent permanent impairment pursuant to Dr. Meyers's opinion, particularly in that it was also

---

[176] *Id.*
[177] *Id.* (quoting Class 2, Table 6-4 of the AMA Guides (A124)).
[178] *Id.* (emphasis added).
[179] *Id.* at 6–7 (A131–A132).
[180] *Id.* at 7 (A132).

28

based on subjective symptoms that Dr. Meyers (and the Board) were [sic] not convinced causally related to the industrial accident."[181]

To summarize, the Board appeared to reason as follows: Dr. Meyers assigned Claimant's rectum a 13% permanent impairment rating in Class 2. A rating in Class 2 is appropriate only if all of the criteria are satisfied. So Dr. Meyers would have had to find evidence supporting each of the Class 2 criteria, including the subjective symptoms criterion. But Dr. Meyers's own observations conflict with the subjective symptoms criterion. So Dr. Meyers must have based his rating, in part, on subjective symptoms that *he himself* was "not convinced causally related to the industrial accident."[182] Thus, the proper conclusion was to assign 0% permanent impairment, not 13%.

Claimant, of course, argues for the opposite conclusion: Dr. Meyers was convinced that Claimant's subjective symptoms did not casually relate to the work accident.[183] Yet he still rated Claimant's rectum at 13% impairment in Class 2.[184] This shows that Dr. Meyers's Class 2 rating was based *solely* on the surgical alteration of Claimant's rectum—the criterion that Dr. Meyers did not reject.[185]

---

[181] *Id.*
[182] *Id.*
[183] Opening Brief at 19 (Trans. ID. 65927833).
[184] *Id.* at 15.
[185] *Id.* at 17; *see also id.* at 20.

29

Thus, the Board improperly contradicted Dr. Meyers's interpretation of the AMA Guides by assigning 0% permanent impairment when Dr. Meyers assigned 13%.[186]

In *Turbitt v. Blue Hen Lines*, the Delaware Supreme Court articulated the scope of the Board's freedom to deviate from a physician's opinion:

> "It is the duty of the Board, not a physician, to fix a percentage to a claimant's disability based on the evidence before it. . . . The Board may set a permanency rating different from that established by a physician, provided that the Board articulates a factual basis for doing so. . . . Although the Board is entitled to discount the testimony of a witness, even a medical witness, on the basis of credibility, it must provide specific, relevant reasons for doing so."[187]

Applying that framework to the facts before it, the Supreme Court concluded that "the Board was not required to accept [the physician's] evaluation of 34% disability at face value . . . ."[188]

Likewise, the Board here was not required to accept Dr. Meyers's 13% rating at face value. It could look "under the hood" and question the basis of that rating. When the Board deviated from Dr. Meyers's rating, it had to—and did—"articulate a factual basis for doing so."[189] That factual basis just so happened to come from Dr. Meyers's testimony.

---

[186] *See id.* at 21.
[187] *Turbitt v. Blue Hen Lines*, 711 A.2d 1214, 1215 (Del. 1998).
[188] *Id.*
[189] *Id.*

Claimant further argues, however, that the Board independently interpreted the AMA Guides to conclude that Claimant should not be awarded permanent impairment when both experts concluded that he should be.[190] But the Board's interpretation was not entirely independent. In his deposition, Dr. Bandera expressly identified each criterion in Class 2 and testified that Claimant had satisfied all of them.[191] The Board took note of this; it did not construe Class 2 language in a vacuum.[192] Accordingly, the Court finds that the Board's decision not to award Claimant permanent impairment benefits pursuant to the AMA Guides was supported by substantial evidence, and the Court will therefore affirm that decision.

2. In light of 19 *Del. C.* § 2326(g), the Board erred as a matter of law by holding that Claimant is not entitled to permanent impairment benefits absent an ongoing condition.

In *Cruz v. Ryder Public Transportation*, the Superior Court declared that "[i]n Delaware, the correct theory of law with regard to permanent injury resulting from workplace accidents is found at title 19, section 2326(g) of the Delaware Code."[193] Section 2326(g) provides, in relevant part: "The Board shall award proper and

---

[190] Opening Brief at 21–22 (citations omitted) (Trans. ID. 65927833).

[191] Dr. Bandera Dep., at 51:19–52:20 (A46).

[192] Order on Claimant's Motion for Reargument, at 4–5 (A129–A130). Notably, in his Opening Brief, Claimant interprets and applies of language in Class 1 of Table 6-4, which neither expert construed in their testimony. Opening Brief, at 17 (quoting Class 1, Table 6-4 of the AMA Guides (A124)) (Trans. ID. 65927833).

[193] *Cruz v. Ryder Pub. Transp.*, 2003 WL 1563719, at *6 (Del. Super. Ct. Mar. 20, 2003) (internal quotation marks omitted); *see also Davis v. Christiana Care Health Servs.*, 2015 WL 899599, at *4 (Del. Super. Ct. Feb. 27, 2015) (citing 19 *Del. C.* § 2326(g)), *rev'd on other grounds*, 127 A.3d 391 (Del. 2015).

31

equitable compensation for the loss of any member or part of the body or loss of use of any member or part of the body . . . ."[194] Whereas the Court in *Cruz* invoked on the "loss of use" portion of § 2326(g),[195] Claimant here invokes the "loss of . . . part of the body" portion.[196] Both invocations are appropriate, and neither requires a claimant to show an ongoing condition, according to the plain language of § 2326(g).[197]

Indeed, in *Chrysler Corporation v. Chambers*, the Superior Court dismissed the employer's "position that functional loss is essential for compensation under § 2326(g)."[198] The Court concluded that the claimant was "entitled to compensation under § 2326(g) for the loss of one testicle irrespective of any loss in sexual function"—that is, irrespective of any ongoing condition.[199] Yet the Board here refused to grant permanent impairment benefits *because* it did not find an ongoing condition.[200] Accordingly, the Court finds that the Board erred as a matter of law by

---

[194] 19 *Del. C.* § 2326(g). The Board stated that "under Section 2326 of title 19 of the *Delaware Code*, the Board *may* award compensation based on the loss or loss of use of any part of the claimant's body." Order on Claimant's Motion for Reargument, at 4 n.6 (A129) (citing *Wilmington Fibre Specialty Co. v. Rynders*, 316 A.2d 229 (Del. Super. Ct. Feb. 6, 1974), *aff'd* 336 A.2d 580 (Del. 1975)). But no subsection of § 2326 uses the permissive verb "may"; in fact, each subsection of § 2326—including § 2326(g)—uses the mandatory verb "shall."
[195] *Cruz*, 2003 WL 1563719, at *6.
[196] *See, e.g.*, Opening Brief, at 15 (Trans. ID. 65927833); Claimant's Motion for Reargument of Board Decision, at ¶ 5 n.2) (A120).
[197] *Chrysler Corp. v. Chambers*, 288 A.2d 450, 452 (Del. Super. Ct. 1972), *aff'd*, 299 A.2d 431 (Del. 1972) ("The clear language of 19 [*Del. C.*] § 2326(g) expressly states that equitable compensation shall be allowed either for the loss of a member of the body or the use thereof.").
[198] *Id.*
[199] *Id.*
[200] DACD Petition, at 27 (A112).

32

requiring Claimant to show an ongoing condition to recover permanent impairment benefits; this error merits reversal and remand to determine the amount of compensation owed.

### B. Fee Schedule

As noted above, Claimant presented the Board with his fee schedule issue on reargument but not in the underlying hearing.[201] But the Board did not dismiss the issue on that basis alone.[202] In fact, before addressing the procedural issue, the Board decided that the fee schedule applied to Claimant's medical treatment because that treatment was provided after May 23, 2008.[203]

The Board did not expressly address Claimant's arguments concerning the collateral source rule or 19 *Del. C.* § 2322(b).[204] Because these arguments raise an issue of first impression, the Court believes that the Board should address them. Accordingly, the Court will remand for the Board to determine whether the collateral source rule and 19 *Del. C.* § 2322(b) remain viable theories of recovery in workers' compensation law despite the enactment of the fee schedule.

### VI. CONCLUSION

---

[201] Order on Claimant's Motion for Reargument, at 8 ("[T]his issue was not raised at the hearing, nor was there any mention that any of the bills had already been paid or at what rate they had been satisfied.") (A133).

[202] *Id.*

[203] *Id.*

[204] *Id.* Claimant maintains that the Board implicitly rejected his collateral source rule argument. Reply Brief, at 5 (Trans. ID. 65999362).

In sum, the Court affirms the Board's decision not to award Claimant permanent impairment benefits pursuant to the AMA Guides, finding that the decision was supported by substantial evidence. But, in light of 19 *Del. C.* § 2326(g), the Court reverses the Board's decision not to award permanent impairment benefits absent an ongoing condition, finding that the Board erred as a matter of law. Lastly, the Court will remand so that the Board can determine (1) the amount of permanent impairment benefits owed and (2) whether the collateral source rule and 19 *Del. C.* § 2322(b) remain viable theories of recovery in workers' compensation law despite the enactment of the fee schedule (19 *Del. C.* § 2322B).

The decision and order of the Board are therefore **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED IN PART** for further proceedings consistent with this decision.

   **IT IS SO ORDERED.**

Jan R. Jurden, President Judge

cc: Prothonotary

34