**AMERICAN INTERNATIONAL GROUP and Veco, Inc., Appellants,**

v.

**Uallen CARRIERE, Appellee.**

**No. S–8921.**

Supreme Court of Alaska.

June 9, 2000.

Robert L. Griffin, Law Offices of Robert L. Griffin, Anchorage, for Appellants.

James B. Pentlarge, Brittain & Pentlarge, Anchorage, for Appellee.

Before EASTAUGH, FABE, BRYNER, and CARPENETI, Justices.

## OPINION

EASTAUGH, Justice.

## I.  INTRODUCTION

When an injured employee did not receive the insurer's check settling the employee's workers' compensation claims, the insurer stopped payment on the original check, but did not promptly send the employee a new check.  The Alaska Workers' Compensation Board denied the employee's request for a statutory penalty for late payment.  The superior court reversed.  We affirm the superior court's decision because we conclude that AS 23.30.155(f) is not discretionary, and that it imposes a continuing duty to satisfy the fourteen-day requirement with tender of a negotiable instrument.

## II.  FACTS AND PROCEEDINGS

Uallen Carriere, an employee of Veco, Inc., sustained a workplace injury in 1989.  To settle Carriere's workers' compensation claims, the parties entered into a Compromise and Release Agreement (C & R), which the Alaska Workers' Compensation Board approved on November 9, 1994.  Pursuant to the C & R, Veco agreed to pay Carriere $42,000 in a lump sum.

Veco carried workers' compensation insurance underwritten by American International Group (AIG).  AIG's local adjuster, Bob Jackson, mailed the lump sum settlement check to Carriere on November 15.  But on November 30, Carriere's attorney telephoned Jackson and told him that Carriere had not received the check, and that Carriere sus-

pected that somebody had been tampering with his mail.  Jackson agreed to stop payment on the outstanding check and to issue a new check.  Another AIG employee phoned Key Bank the next day, December 1, and requested a stop payment on the check.  The bank issued a stop payment effective 12:50 p.m. on December 1.

AIG's Portland office issued the new check on December 17, but did not overnight mail it to Carriere until December 19.  It is undisputed that Carriere received the check on December 20.

On December 16 Carriere filed an Application for Adjustment of Claim with the Alaska Workers' Compensation Board, requesting under AS 23.30.155(f) a twenty-five-percent penalty for late payment.  At the board's hearing on that application, Carriere argued first that Jackson could not prove that he had mailed the first check on November 15, 1994, and, second, that the statute's fourteen-day period restarted after the stop-payment order became effective on December 1, 1994.  AIG argued that it had satisfied AS 23.30.155(f) when it mailed the first check on November 15.

The board denied Carriere's request for a penalty.  The board ruled that (1) "payment is made when the check is mailed to the person entitled to it"; (2) AIG mailed the C & R check on November 15, 1994; and therefore (3) "the insurer complied with the 14-day requirement of AS 23.30.155(f)."  The board also ruled that the statutory clock did not restart on December 1, because "the employee's request for reissuance of his check is not 'compensation payable under the terms of an award' triggering the penalty provisions in AS 23.30.155(f)."

Carriere appealed to the superior court.  The superior court found that the fourteen-day statutory clock restarted on December 2, the day after the stop payment became effective.  Because the Portland office did not send the check by overnight mail until December 19, payment was not timely.  The superior court reversed the board's decision and remanded for award of a penalty.

AIG appeals the superior court's decision.

## III. DISCUSSION

### A. Standard of Review

■ When reviewing the merits of an agency decision, this court gives no deference to the decision of the superior court acting as an intermediate court of appeal.[1] The court instead directly reviews the merits of the board's decision.[2] We apply a "substantial evidence" test to the board's factual findings, ensuring that there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[3]

■ We apply the substitution of judgment test when considering "questions of law where no agency expertise is involved," especially "in the context of statutory interpretation or other analysis of legal relationships about which courts have specialized knowledge and experience."[4] The main issue here is a pure question of statutory interpretation: whether the fourteen-day time period of AS 23.30.155(f) begins to run anew after the insurer, at the employee's request, stops payment on a timely-mailed check that did not reach the employee. We therefore apply the substitution of judgment standard to the core legal question in this appeal.

### B. The First Check Was Mailed in a Timely Fashion.

Substantial evidence supports AIG's contention that its local adjuster, Bob Jackson, mailed the initial check to Carriere on November 15. The board found that Jackson had indeed mailed the check on November 15 based on:

1) the photo copy of the November 12, 1994 check bearing the employee's correct address; 2) Mr. Jackson's testimony and log entries; 3) a separate check sent to the employee's attorney (we have received no complaints regarding this check for attorney's fees); [and] 4) the employee's testimony that he believed he was a victim of mail tampering.

The record supports the board's finding that the check was mailed on November 15. Jackson's records in particular are quite thorough, and we have no reason to doubt their accuracy.

### C. The Board's Date of Mailing Rule Does Not Apply Here.

Alaska Statute 23.30.155(f) provides:

If compensation payable under the terms of an award is not paid within 14 days after it becomes due, there shall be added to that unpaid compensation an amount equal to 25 percent of it. . . . [5]

The statutory clock therefore begins when "compensation payable under the terms of an award ... becomes due." The board approved the C & R on November 9; compensation therefore became due as of that date.

■ Since 1981 the board has interpreted AS 23.30.155(f) to mean that an employer or insurer complies with the statute by depositing a check in the mail before the fourteen-day period expires.[6] We think this is a reasonable interpretation. The statute gives the board no discretion to forgive penalties, as the board has repeatedly recognized.[7] Because the board lacks that discretion, insurers and employers cannot rely upon appeals to fairness and justice in order to excuse faultless delays. Instead, it is appropriate that the board follow a bright line such as the "date of mailing" rule so

1. See Thompson v. United Parcel Serv., 975 P.2d 684, 687–88 (Alaska 1999) (applying substantial evidence test to factual findings of Alaska Workers' Compensation Board).

2. See id.

3. Id. at 688 (quoting Interior Paint Co. v. Rodgers, 522 P.2d 164, 170 (Alaska 1974)).

4. Id. (internal citations omitted).

5. AS 23.30.155(f).

6. See Bellinger v. Universal Serv., Inc., AWCB # 81–0014 at 5 (Jan. 22, 1981). The board reiterated this rule most recently in Tilden v. State Leasing, AWCB # 98–0174 at 5–6, 1998 WL 771161 (June 29, 1998).

7. See Short v. John Cabot Trading Co., AWCB # 98–0037 at 3, 1998 WL 770997 (Feb. 25, 1998) ("We have repeatedly concluded that we have no authority to excuse the penalty on a late payment under an award no matter how appealing the reason for late payment may be."); Stockley v. Noble Mechanical, AWCB # 87–0304 at 2, 1987 WL 95591 (Nov. 27, 1987) (same).

that all parties can operate with some predictability. In the usual case in which an employer or insurer mails the check within fourteen days, and that check is ultimately received and cashed, we will not disturb the board's interpretation.

■ But the circumstances here are unique. On December 1 AIG stopped payment on the initial check. The stop payment became effective at 12:50 p.m. that day. The bank's assistant vice president testified that AIG "could have safely written a replacement check to the recipient after 12:50 on 12/1/94." If a customer had presented the check after that time, it would not have been honored.[8] Thus, no negotiable instrument existed that could have been presented for payment after 12:50 p.m. December 1.

We hold that stopping payment on the initial check at Carriere's request reinstated the payment obligation, imposing a new fourteen-day deadline. The board's "date of mailing" rule works in practice as long as the original check remains negotiable. An employer or insurer's payment obligation is conditionally satisfied when the check is mailed, but the check must be negotiable and must ultimately be received. If, for example, an insurer's check were to be rejected when presented for payment, the employer could not rely on the "date of mailing" rule to avoid a penalty under AS 23.20.155(f). This would be so regardless of whether the insurer had erroneously stopped payment or the account had insufficient funds: the insurer is not relieved of its payment obligation on the date of mailing if the employee receives a check which is no longer negotiable.

Here, the parties agreed on November 30 that AIG would stop payment of the original check, and issue a replacement. They thus essentially agreed to start over, and to attempt once again to ensure that Carriere received his payment. As of December 1 there was no longer an instrument in existence that could have satisfied the November 9 award. We think the statute is best read to mean that, the original check having become non-negotiable as of December 1, the payment of the award again became due on that date. Once the original check became non-negotiable—at 12:50 p.m. on December 1—the obligations of AS 23.30.155(f) were reimposed, and the clock restarted. The statute requires a penalty if the compensation is not paid within fourteen days after it becomes due.[9] Because AIG did not mail the substitute payment to Carriere until December 19, AIG failed to comply with the fourteen-day mandate of the statute, and a penalty was required.

AIG argues that it waited a commercially reasonable time before issuing the second check. But the statute does not permit payment within a "commercially reasonable" time; it mandates payment within fourteen days.[10] There is no discretion to excuse a late payment, no matter how blameless the insurer may be.[11] The legislature chose a bright-line rule, we think wisely, to force insurers to take every possible step to ensure that a check is mailed promptly. Because we hold that the payment obligation springs up again when a check becomes non-negotiable, even if it was timely mailed, these same bright-line rules must apply to an insurer's obligation to ensure payment within fourteen days after the stop payment became effective.

Given this conclusion, we see no merit in AIG's argument that only AIG's receipt of the bank's written stop order confirmation would have revived the payment obligation. An injured employee should not have to bear the burden of the insurer's internal accounting procedures, especially here, where the insurer could have telephoned the bank and confirmed the entry of the stop payment order as early as the afternoon of December 1. While we recognize that stopping payment requires internal control procedures,

8. The vice president further explained that the original check could have been paid only if another bank customer had deposited it earlier the same day (before 12:50 p.m.), and if the bank's computers were not showing the check paid at the time the bank executed the stop payment order.

9. See AS 23.30.155(f).

10. See AS 23.30.155(f).

11. See id. See also Short, AWCB # 98–0174 at 3; Stockley, AWCB # 87–0304 at 2.

AIG does not argue that a timely payment was impossible in this case. And the record establishes that the insurer had ample time to reissue the check and send it to the employee within fourteen days.

## IV. CONCLUSION

We therefore AFFIRM the superior court's decision.

MATTHEWS, Chief Justice, not participating.