Joseph LEVAN, Claimant
Below–Appellant,

v.

INDEPENDENCE MALL, INC.,
Employer Below–Appellee.

No. 121, 2007.

Supreme Court of Delaware.

Submitted: Sept. 5, 2007.
Decided: Dec. 5, 2007.

Edward B. Carter and Lawrance Spiller Kimmel (argued), Esquires, of Kimmel, Carter, Roman & Peltz, P.A., Bear, Delaware, for Appellant.

David R. Batman, Esquire, of Heckler & Frabizzio, P.A., Wilmington, Delaware, for Appellee.

Before STEELE, Chief Justice, HOLLAND, BERGER, JACOBS and RIDGELY, Justices, constituting the Court en banc.

RIDGELY, Justice.

Appellant Joseph LeVan was injured in a work-related accident in 1989 while employed by Appellee Independence Mall ("Employer"). A check issued by the Employer's insurance carrier to pay medical expenses was mailed on February 3, 2000. The medical provider deposited the check on February 11, 2000. LeVan filed a petition for additional compensation with the

Industrial Accident Board on February 9, 2005. The Board held that his petition was barred by the five-year statute of limitations.[1] The Superior Court affirmed that ultimate ruling but employed an analysis based upon the date of mailing plus three business days. LeVan argues in this appeal that the statute of limitations begins to run when the claimant or his medical provider actually receives the last payment. He also argues that the Board's decision is not supported by substantial evidence, that the Superior Court applied its own construction of the statute incorrectly, and erred when it upheld the ultimate ruling of the Board that his petition is barred.

Under 19 *Del. C.* § 2361(b), "[w]here payments of compensation have been made in any case under an agreement approved by the Board or by an award of the Board, no statute of limitations shall take effect until the expiration of 5 years from the time of the making of the last payment for which a proper receipt has been filed with the Department." We hold that a payment is "made" when a check is mailed to the employee-claimant or a medical provider, conditioned upon the check being negotiable and ultimately received. This gives effect to the legislative intent in this context and affords the most predictable and unambiguous date to determine when a payment is "made" for purposes of the statute of limitations. It is also consistent with the triggering date of mailing used in other wage and workers' compensation contexts. Because LeVan's petition was filed more than five years after the mailing of the last payment, his petition is barred by the statute of limitations. Accordingly, we affirm.

## I.

In October 1989, LeVan was injured in a work-related accident. As a result, LeVan

---

1. 19 *Del. C.* § 2361(b).

received workers' compensation benefits. The last payment of indemnity (lost wage) benefits was in 1994, but his Employer approved payment of medical bills through August 11, 1999. LeVan received further medical treatment in August 1999 and submitted that bill for payment.

On February 3, 2000, the Employer's insurance carrier issued and mailed the last medical benefits check to LeVan's medical provider, Orthopaedic Specialists, in the amount of $228.00. This check represented the last payment made by the Employer relating to LeVan's compensable injury.

The date the check was received was much less clear. The office manager for Orthopaedic Specialists testified that the check was deposited on February 11 and was posted to their ledger on February 18. No witness from the medical provider's offices was able to state when the check was actually received. Generally, it was not uncommon at the medical provider's offices for some period of time to elapse between the receipt and deposit of a check.

On February 8, 2005, LeVan faxed his Petition to Determine Additional Compensation Due to the Board during regular business hours.[2] This occurred more than five years after the last check was mailed, but within five years of the date the check was deposited. After the petition was filed, the Employer raised the statute of limitations defense.

The Board held a hearing and agreed with the Employer that the claim was time barred. It found that no witness was able to establish the exact date the check was received. It also found that the check was issued and mailed on the same day, February 3, 2000, and there was no fraud or deceit in the mailing of the check. To avoid uncertainties that arise from triggering the statute of limitations upon receipt, the Board interpreted § 2361(b) as beginning to run upon the date of the issuance of the check. Because there was no dispute that the check was issued on February 3, 2000 and the petition was not filed until February 9, 2005, the Board concluded that the statute of limitations had expired. It therefore dismissed LeVan's petition as time barred.

LeVan appealed to the Superior Court. The Superior Court agreed that the statute of limitations had expired, but under a different rationale. The court found that the "time of the making of the last payment" under § 2361(b) is the actual date of receipt of the payment, unless the recipient has acted in bad faith. Further, because of the uncertainty here, the Superior Court determined that in the absence of proof of the actual date of receipt of the payment, the date of receipt would be deemed the date of the mailing of the payment, plus three business days. After finding that there was no conclusive testimony on the date of receipt, the Superior Court deemed the receipt date to be three business days · after February 3, 2000, which would have been Tuesday, February 8, 2000.[3] The Superior Court then decided that the petition was barred because it was filed on February 9, 2005. This appeal followed.

## II.

▮▮▮ When reviewing an appeal from the Board, "the only role of the appellate court is to determine whether the decision

2. The fax from LeVan is time stamped 3:35 p.m., February 8. The Board's time-stamp on the petition is 4:18, February 9. The time of day (a.m. or p.m.) is unreadable.

3. In the written order, the Superior Court appears to have miscalculated the dates by writing that the date of the receipt would have been Tuesday, February 7, but corrected this error by writing "Tuesday is February 8, 2000—still 1 day off" in its order.

of the Board is supported by substantial evidence and is free from legal error." [4] It is well-established that the appellate court does not sit as the trier of fact, rehear the case, reweigh the evidence, make credibility determinations, or substitute its own judgment for that of the Board. [5] Questions of law, such as the construction of the workers' compensation statute, are reviewed *de novo*. [6] Likewise, whether a complaint is barred by a statute of limitations is a question of law that we review *de novo*. [7] Particularly, "[i]t is the well recognized duty of a court to construe statutes of limitation so as to establish just and reasonable guidelines for different classes of cases in light of the general policy of repose." [8]

### A.

Section 2361(b) of Title 19 provides:

Where payments of compensation have been *made* in any case under an agreement approved by the Board or by an award of the Board, no statute of limitations shall take effect until the expiration of five years from the *time of the making of the last payment* for which a proper receipt has been filed with the Department. [9]

We have previously emphasized that this statute "unambiguously provides that *no* statute of limitation shall take effect until five years from the last payment of benefits." [10] We have also stated that the limitations period begins "to run on the date that the last medical payment was made." [11] More recently, courts have placed "primary importance on the date of the last payment, and to de-emphasize the significance of the filing of a receipt." [12] The question of what date determines when a payment is "made" for purposes of the statute of limitations is a matter of first impression in Delaware.

"The goal of statutory construction is to determine and give effect to legislative intent." [13] An unambiguous

---

4. *Std. Distrib., Inc. v. Hall,* 897 A.2d 155, 157 (Del.2006). *See also Anchor Motor Freight v. Ciabattoni,* 716 A.2d 154, 156 (Del.1998) ("The Board's factual findings will be upheld if they are supported by substantial evidence, which means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'") (citation omitted).

5. *Hall,* 897 A.2d at 157; *Gen. Motor Corp. v. Kane,* 2006 WL 1650807, at *2 (Del.Supr.).

6. *Page v. Hercules,* 637 A.2d 29, 32 (Del.1994) ("The construction of our workers' compensation law, 19 *Del. C.* sections 2301, *et seq.,* ... is a question of law this Court reviews *de novo.*").

7. *Parker v. Gadow,* 893 A.2d 964, 966 (Del. 2006).

8. *Ewing v. Beck,* 520 A.2d 653, 662 (Del. 1987). *See also Leatherbury v. Greenspun,* 939 A.2d 1284, 2007 WL 4216850, at *5 (Del. Nov.30, 2007) ("Delaware courts have consistently held that strict construction is particu-

larly important when construing statutes of limitation where 'the General Assembly has evinced its intent to bar claims filed after the stated time.'") (citations omitted).

9. 19 *Del. C.* § 2361(b) (emphasis added).

10. *National Union Fire Ins. Co. v. McDougall,* 877 A.2d 969, 975 (Del.2005).

11. *Starun v. All Am. Eng'g Co.,* 350 A.2d 765, 768 (Del.1975).

12. *Lawhorn v. New Castle County,* 2006 WL 1174009, at *3 (Del.Super.), *aff'd,* 913 A.2d 570 (Del.) (Table).

13. *Eliason v. Englehart,* 733 A.2d 944, 946 (Del.1999). *See generally Carper v. New Castle County Bd. of Ed.,* 432 A.2d 1202, 1205 (Del. 1981) ("The synopsis of the [legislative bill is] a proper source from which to glean legislative intent."); *Leatherbury,* 939 A.2d at 1289, 2007 WL 4216850, at *3–4 (stating that "the preamble of [an act]" and "the synopsis accompanying the amendment" are "instruc-

statute precludes the need for judicial interpretation, and "the plain meaning of the statutory language controls." [14] An ambiguous statute should be construed "in a way that will promote its apparent purpose and harmonize it with other statutes" within the statutory scheme.[15] A statute is ambiguous if "it is reasonably susceptible of different conclusions or interpretations" or "if a literal reading of the statute would lead to an unreasonable or absurd result not contemplated by the legislature." [16]

**1.**

We begin our analysis with the language of the statute itself. Section 2361(b) of Title 19 provides that the statute of limitations runs from "the time of the making of the last payment." In both legal and nonlegal definitions, "to make" means "to cause (something) to exist." [17] The legal definition of a "maker" refers to "a person who signs a promissory note." [18] In choosing to start the statute of limitations upon the "time of the making of the last payment," without any further clarification or definition of the term, the Legislature's use of the word "making" is given its ordinary meaning. In this case, the "mak-

ing" of the last payment would be when the maker of the check caused it to exist.

Because the legislature also conditioned the statute on the "time of the making of the last payment" and not solely its "making," we must also determine when a payment is made. The date on which a payment is "made" arguably could occur when a check is issued, sent, received, deposited, or honored. These various possibilities require us to make a choice that best effectuates the intent of the Legislature. Because the Workers' Compensation Act provides that any amount due under the Act may be collected as wages are collected,[19] the statutory scheme for the payment of wages is relevant to our determination.[20]

**2.**

The Delaware Wage Payment and Collection Act [21] provides for payment to be made, among other ways, by mail: "If an employee is for any reason not present on the regular payday, payment shall be made either by mail if requested by the employee or at the next regular workday that the employee is present or by the credit to the bank account designated by the employee." [22] In other words, in cer-

tive" in determining the General Assembly's intent).

14. *Eliason*, 733 A.2d at 946. *See also Oceanport Indus., Inc. v. Wilmington Stevedores, Inc.*, 636 A.2d 892, 900 (1994) ("Undefined words in a statute must be given their ordinary, common meaning. Additionally, words in a statute should not be construed as surplusage if there is a reasonable construction which will give them meaning, and courts must ascribe a purpose to the use of statutory language, if reasonably possible.") (internal citations omitted).

15. *Eliason*, 733 A.2d at 946.

16. *Newtowne Vill. Serv. Corp. v. Newtowne Rd. Dev. Co.*, 772 A.2d 172, 175 (Del.2001).

17. Webster's II New College Dictionary 661 (2001) (defining "make" as "to cause to exist or happen; create"); Black's Law Dictionary 967 (7th ed.1999) (defining "make" as "to cause (something) to exist").

18. Black's Law Dictionary 967.

19. 19 *Del. C.* § 2357.

20. Although the Uniform Commercial Code addresses when a check is "paid" *(see* 6 *Del. C.* § 3–602), we find the context of the Workers' Compensation Act and the Wage Payment and Collection Act to be more relevant to the issue before us.

21. 19 *Del. C.* §§ 1101–1115.

22. 19 *Del. C.* § 1102(c).

tain circumstances, payment is made when the check is mailed.

The analogy of a civil action to collect benefits also demonstrates that the date of receipt is not controlling. Civil actions filed under 19 *Del. C.* § 2357 "to collect unpaid workers' compensation awards have become known as '*Huffman*' claims,"[23] named after *Huffman v. C.C. Oliphant & Son, Inc.*[24] We have previously held that the applicable statute of limitations for *Huffman* claims is subject to 19 *Del. C.* § 2361(b).[25] Further, we have held that "the focus of the *Huffman* award must be on the employer's failure to pay once the thirty day default period has expired after proper demand."[26] *Huffman* claim cases demonstrate that "the event that begins the thirty day statutory period for payments" (i.e., when *Huffman* triggers) is the date the *Huffman* demand letter is mailed "because it put[s] the employer on clear notice...."[27] If the date that a *Huffman* demand letter is mailed is sufficient to trigger that statutory period to pay benefits, then the date the payment is mailed should also be sufficient to trigger the statute of limitations for any petition for additional compensation.

**B.**

LeVan argues that the "time of the making of the last payment" should be the date of receipt. In making this argument, he relies heavily on the Pennsylvania Supreme Court case of *Romaine v. Workers' Compensation Appeal Board (Bryn Mawr Chateau Nursing Home)* and cases cited therein,[28] which held that the statute of limitations period runs from the date of receipt of the check.[29] The *Romaine* court explained that "payment is conditionally made when the [claimant] accepts payment by a check from the [employer]. If the check is honored, the condition is removed and the payment relates back to the date of [receipt]."[30] The court then held that the claimant bears the burden of proving the date of receipt.[31]

We choose not to follow the rationale used in *Romaine* for two reasons. The first is the intent of our General Assembly under our worker's compensation and wage payment statutory scheme that a payment can be "made" by mailing. The second reason is that "it is appropriate [to] follow a bright line such as the 'date of mailing' rule so that all parties can operate with some predictability."[32] Predictability

---

23. *McDougall*, 877 A.2d at 971.

24. 432 A.2d 1207 (Del.1981).

25. *McDougall*, 877 A.2d at 974–75. *See also Holden v. Gaico, Inc.*, 736 A.2d 202, 203 (Del. 1999) ("[W]e hold that if a default is made by the employer for thirty days after demand in the payment of any amount due under the Workers' Compensation statute, the amount due may be recovered in the same manner as claims made pursuant to the Wage Payment and Collection Act.").

26. *Acro Extrusion Corp. v. Cunningham*, 810 A.2d 345, 348 (Del.2002) (concluding that the "event that begins the thirty day statutory period for payment[ ] was the September 21, 1998 letter because it put the employer on clear notice that [the employee] was appealing only the denial of partial disability payments").

27. *Id.*

28. 587 Pa. 471, 901 A.2d 477 (2006).

29. The applicable statute in *Romaine* provides: "no notice of compensation payable, agreement or award shall be reviewed, or modified or reinstated, unless a petition is filed with the department within three years after the date of the most recent payment of compensation made prior to the filing of such petition." *Id.* at 485.

30. *Id.*

31. *Id.* at 486–87.

32. *Am. Intern. Group v. Carriere*, 2 P.3d 1222, 1224–25 (Alaska 2000).

is better achieved when the payment obligation of an employer or insurer is "conditionally satisfied when the check is mailed, but the check must be negotiable and must ultimately be received." [33]

In this case, the Board found that the check was mailed on February 3, 2000. It also determined that there was no evidence of fraud or deceit in mailing the check, and it was ultimately received and honored. LeVan's petition for additional compensation was filed on February 8, 2005, more than five years after the mailing of the last payment. That finding is supported by substantial evidence in the record. Accordingly, the Board did not err in dismissing LeVan's petition as untimely and barred by the statute of limitations, 19 *Del. C.* § 2361(b).

### III.

The judgment of the Superior Court is **AFFIRMED.**