# IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| WILD MEADOWS MHC, LLC, | § § | |
| Petitioner Below, Appellant, | § § § | No. 253, 2020 |
| v. | § § § | Court Below – Superior Court of the State of Delaware |
| DAVID J. WEIDMAN, ESQUIRE, ARBITRATOR, | § § § | C.A. No. K19M-07-003 |
| Respondent Below, Appellee, | § § § | |
| and | § § | |
| WILD MEADOWS HOMEOWNERS' ASSOCIATION | § § § | |
| Intervenor/ Respondent Below, Appellee. | § § | |

Submitted: February 10, 2021
Decided: April 14, 2021

Before **SEITZ**, Chief Justice; **VAUGHN** and **MONTGOMERY-REEVES**, Justices.

Upon appeal from the Superior Court of Delaware. **AFFIRMED**

Michael P. Morton, Esquire, Robert J. Valihura, Jr., Esquire, and David C. Zerbato, Esquire, MORTON, VALIHURA & ZERBATO, LLC, Greenville, Delaware; *Attorneys for Appellant, Wild Meadows MHC, LLC*.

James P. Sharp, Esquire, MOORE & RUTT, P.A., Georgetown, DE; *Attorney for Appellee, David J. Weidman, Esquire, Arbitrator.*

Olga Beskrone, Esquire, COMMUNITY LEGAL AID SOCIETY, INC., Wilmington, Delaware; *Attorney for Appellee Intervenor/Respondent Wild Meadows Homeowners' Association*.

**MONTGOMERY-REEVES**, Justice:

In this appeal, Wild Meadows MHC, LLC ("Wild Meadows") challenges the Superior Court's dismissal of its petition for a writ of prohibition. Wild Meadows contends that the Superior Court erroneously held that an arbitrator appointed under Delaware's Rent Justification Act has the authority to compel discovery and impose a confidentiality agreement upon parties concerning discovery material. For the reasons set forth below, we AFFIRM the judgment of the Superior Court.

## I.     BACKGROUND

The Wild Meadows manufactured home community (the "Community"), owned by appellant Wild Meadows, is located in Dover, Delaware.[1] Those living in the Community own their manufactured homes but pay rent for the land. Therefore, the Community is governed by the Manufactured Home Owners and Community Owners Act[2] and its subsection commonly known as the Rent Justification Act (the "Act").[3] Appellee Intervenor/Respondent Wild Meadows Homeowners' Association (the "HOA") represents these homeowners.

---

[1] App. to the Opening Br. A018 (hereinafter "A . . .").

[2] *See* 25 *Del. C.* §§ 7001-67 (2013) (amended 2019). As the Superior Court noted the below, the Assembly redesignated (*i.e.*, renumbered) and amended the statutory provisions relevant to this appeal. *See* 82 Del. Laws ch. 38, § 42 (2019) (amending and redesignating statutory sections); *Wild Meadows MHC, LLC v. Weidman*, 2020 WL 3889057, at *1 n.3 (Del. Super. Ct. July 10, 2020). (providing that the Superior Court cited to the old codification). This opinion will cite the former statutes as they existed before the amendments because the issues in question arose before the Act's redesignation.

[3] *See* 25 *Del. C.* §§ 7040-7046 (current version at 25 *Del. C.* §§ 7050-56).

2

On October 31, 2018, Wild Meadows notified each homeowner with an expiring lease that lot rent would increase above the average annual increase of the Consumer Price Index (the "CPI-U") under the Act. Subsequently, Wild Meadows conducted the statutorily required meeting, under § 7043(b), to disclose and explain the reasons for the rent increase.[4] Multiple homeowners rejected Wild Meadows' rent increase and, through the HOA, filed a petition with the Delaware Manufactured Home Relocation Authority (the "Authority").[5]

The Authority appointed Appellee David J. Weidman, Esquire as the arbitrator under § 7043(c). Arbitration was scheduled for February 6, 2019.[6] Before the scheduled arbitration, the HOA requested financial information from Wild Meadows relating to the Community's recent revenue and costs.[7] Wild Meadows refused to provide this information.[8] The HOA filed a motion to compel discovery and a motion for summary judgment with Weidman.[9]

In his initial decision dated January 18, 2019, Weidman granted discovery of any financial documents that Wild Meadows intended to rely upon at arbitration, but he denied the HOA's motion to compel the production of additional financial documents from Wild

---

[4] A021.
[5] *Wild Meadows*, 2020 WL 3889057, at *1.
[6] A061.
[7] Intervenor Answering Br. 4.
[8] *Id.* at 4-5.
[9] A061.

Meadows.[10] The HOA submitted a motion for reconsideration of the first decision regarding four categories of documents:

> 1. Income statements from Wild Meadows for fiscal years 2016, 2017 and 2018.
>
> 2. Audited financial statements for Wild Meadows for FY 2016, 2017 and 2018.
>
> 3. The trial balances for Wild Meadows for FY 2016, 2017 and 2018.
>
> 4. Whatever else Wild Meadows intends to rely upon to establish at arbitration that the rent increase it seeks is "directly related to operating, maintaining or improving" the Wild Meadows community.[11]

In the interim, this Court issued its opinion in *Sandhill Acres MHC, LLC v. Sandhill Home Owners Association*.[12] Weidman, relying on our *Sandhill* decision, granted the HOA's requests for discovery of all four categories in his decision dated June 7, 2019.[13] Having determined that he could compel discovery, Weidman ordered Wild Meadows to submit a proposed confidentiality agreement and ordered the HOA to submit any comments on the draft.[14] He warned that if the parties could not come to a consensus, he would issue a final

---

[10] A064-66.
[11] A069.
[12] 210 A.3d 725 (Del. 2019).
[13] A070-72.
[14] A072.

confidentiality agreement.[15] Wild Meadows submitted its proposed confidentiality agreement, to which the HOA voiced numerous concerns.[16]

Weidman issued a final confidentiality agreement on June 26, 2019.[17] Weidman rejected many of the changes the HOA proposed, but he expanded the "attorney's eyes only provision" to include "any directors, officers, or Board representatives who are attending the arbitration on behalf of the Association, up to the five (5) person limit, and only if those persons execute the [confidentiality agreement] to keep any confidential material . . . confidential."[18] To further protect confidential information, the agreement provided:

> Recipients of any Confidential Material are prohibited from copying or permitting to be copied (whether by taking notes, photographs, Xerox machine or otherwise), or creating an electronic image of all or any portion of the Confidential Material, except for use by counsel for the parties for use in the Arbitration. Recipients shall not permit any person to review all or any portion of the Confidential Material, other than as provided in this Agreement. Further, Recipients shall not discuss or disclose any Confidential Material to any 3rd Party outside of the persons set forth in Paragraphs 5(A) through (E).[19]

Wild Meadows refused to sign the confidentiality agreement and, on July 3, 2019, filed for a writ of prohibition in the Superior Court.[20] In its writ of prohibition, Wild

---

[15] *Id.*

[16] Opening Br. 15; Intervenor Answering Br. 6.

[17] A075.

[18] *Id.* ("This decision balances the need for confidentiality against the ability of the [HOA]'s representatives to meaningfully participate with counsel in preparing for the arbitration.").

[19] A080-81. This was just one of many safeguards Weidman included in the confidentiality agreement. *See* A079-84.

[20] *Wild Meadows*, 2020 WL 3889057, at *2.

Meadows argued that Weidman exceeded his authority by ordering Wild Meadows to (1) "produce documents and engage in discovery matters not to be used or relied upon by [Wild Meadows] in the arbitration" and (2) "agree to a Confidentiality [agreement] which [Wild Meadows] will not accept."[21] In response, both Weidman and the HOA filed separate motions to dismiss.[22] Wild Meadows filed a motion for judgment on the pleadings.[23] Oral arguments were held on June 18, 2020.[24]

On July 10, 2020, the Superior Court granted the motions to dismiss filed by both the HOA and Weidman.[25] The court ruled that Weidman had the authority, under the Act and this Court's caselaw, to compel discovery of the financial information.[26] The Superior Court also denied Wild Meadows' challenges to the confidentiality agreement, concluding that Weidman "properly wielded [that authority] to balance the HOA's right to access to the information with Wild Meadows' confidentiality and proprietary concerns."[27] Wild Meadows appeals this decision.

---

[21] A031.

[22] A008-009 (The HOA filed its motion to dismiss on November 27, 2019. Weidman's was filed on January 31, 2020).

[23] A008.

[24] A090.

[25] *Wild Meadows*, 2020 WL 3889057, at *1.

[26] *Id*. at *6-10.

[27] *Id*. at *10-12.

## II. ANALYSIS

Wild Meadows argues that the Superior Court erroneously dismissed its petition by incorrectly holding that the Rent Justification Act permits arbitrators to compel discovery of financial information and to impose a confidentiality agreement upon the parties in rent justification proceedings.

This Court reviews a decision granting a motion to dismiss *de novo*.[28] The standards governing a motion to dismiss for failure to state a claim are well settled: we (1) accept all well-pleaded factual allegations as true, (2) accept even vague allegations as "well-pleaded" if they give the opposing party notice of the claim, (3) draw all reasonable inferences in favor of non-moving party, and (4) do not affirm a dismissal unless the plaintiff/petitioner would not be entitled to recover under any reasonably conceivable set of circumstances.[29]

We also review a trial court's interpretation of the Act, like any other statutory interpretation, *de novo*.[30] Our role is to determine and give effect to the legislature's intent.[31] In doing so, we must "interpret the statutory language that the General Assembly actually adopt[ed], even if unclear and explain what [this Court] ascertain[s] to be the legislative intent without rewriting the statute to fit a particular policy position."[32] If the statute in

---

[28] *Cent. Mortg. Co. v. Morgan Stanley Mortg. Cap. Hldgs., LLC*, 27 A.3d 531, 535 (Del. 2011) (citing *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896 (Del. 2002)).
[29] *Savor, Inc.*, 812 A.2d at 896-97.
[30] *Sandhill Acres*, 210 A.3d at 728.
[31] *LeVan v. Indep. Mall, Inc.*, 940 A.2d 929, 932 (Del. 2007).
[32] *Taylor v. Diamond State Port Corp.*, 14 A.3d 536, 542 (Del. 2011); *Pub. Serv. Comm'n v. Wilm. Suburban Water Corp.*, 467 A.2d 446, 451 (Del. 1983) ("Judges must take the law as they find it,

question is unambiguous, this goal is accomplished by applying the plain, literal meaning of its words.[33] Stated differently, "[i]f a statute is not reasonably susceptible to different conclusions or interpretations, courts must apply the words as written, unless the result of such a literal application could not have been intended by the legislature."[34]

## A. Ability to Compel Discovery

Wild Meadows argues that an arbitrator lacks statutory authority to compel discovery because the text of the Act omits any reference to discovery proceedings. According to Wild Meadows, a community owner must produce whatever it intends to rely on to justify its rents.[35] If the homeowners request additional information to test the community owner's justifications and the community owner does not comply, then the community owner runs the risk that the arbitrator will find the rent increase unjustified. Thus, according to Wild Meadows, the community owner completely controls the flow of information in a rent justification proceeding.[36] We disagree with this interpretation of the Act.

An arbitrator may compel the production of documents under the Act and applicable provisions of the Delaware Administrative Code. The General Assembly, through the

---

and their personal predilections as to what the law should be have no place in efforts to override properly stated legislative will.").

[33] *Arnold v. State*, 49 A.3d 1180, 1183 (Del. 2012) (citing *Dennis v. State*, 41 A.3d 391, 393 (Del. 2012)).

[34] *Leatherbury v. Greenspun*, 939 A.2d 1284, 1289 (Del. 2007) (citing *Rubick v. Sec. Instrument Corp.*, 766 A.2d 15, 18 (Del. 2000)).

[35] Opening Br. 22.

[36] *Id.* at 24-30.

8

Manufactured Home Owners and Community Owners Act, created the Authority.[37]   The

Authority was tasked with overseeing manufactured home communities and was granted the

explicit power to "[a]dopt a plan of operation and articles, bylaws, and operating rules."[38]

Under 25 *Del. C.* § 7011(c)(1), the Authority has the power to create regulations; the most

relevant here are the Rent Increase Dispute Resolution Procedures.[39]   Under 1 *Del. Admin.*

*C.* § 202-1.0, the Authority recognized its obligation to "implement[] and oversee[] the

process by which rent increase disputes are resolved . . . ."[40]   To that end, the Authority

promulgated § 202-7.10, which expressly allows an arbitrator to compel discovery of

documents that are relevant to the rent increase at issue.

> The arbitrator is authorized to schedule an informal preliminary conference with the parties (in person or by telephone) as the arbitrator deems appropriate in order to narrow the issues and minimize the expense of the arbitration process. *The arbitrator is authorized to require the parties to exchange or provide to the other parties documents relevant to the rent increase at issue, including documents related to the standards set forth in* 25 *Del. C.* § 7042.[41]

This regulation is consistent with the overall purpose of the Act.   The General

Assembly enacted the Rent Justification Act to "protect the substantial investment made by

manufactured homeowners, and enable the State to benefit from the availability of affordable

---

[37] 25 *Del. C.* § 7011 (2013) (current version at 25 *Del. C.* § 7041).
[38] *Id.* § 7011(c)(1).
[39] *See* 1 *Del. Admin. C.* §§ 202-1.0 to 9.0.
[40] *Id.* § 202-1.0.
[41] *Id.* § 202-7.10 (emphasis added).

housing for lower-income citizens, without the need for additional state funding."[42]  At the same time, the General Assembly recognized the property and other rights of manufactured home community owners and sought to provide them with fair return on their investment.[43] Therefore, the overarching purpose of the Act is to balance the conflicting interests of protecting manufactured homeowners from "unreasonable and burdensome . . . rental increases while simultaneously providing . . . community owners . . . a just, reasonable, and fair return on their property."[44]

To ensure a fair return on their property, community owners may raise a homeowner's rent in an amount greater than the CPI-U.  But to protect the homeowners from an "unreasonable increase," a community owner must demonstrate that such an increase is justified.[45]  To make this showing, the community owner must show that it "has not been found in violation of" health and safety regulations "during the preceding 12-month period," and that "[t]he proposed rent increase is "directly related to operating, maintaining, or improving the manufactured home community, and justified by 1 or more factors listed under subsection (c) . . . ."[46]

In *Bon Ayre II,* we explained the "directly related" inquiry as such:

> To impose an increase beyond CPI-U, the landowner must prove more.  In particular, it must show that the increase is

---

[42] 25 *Del. C.* § 7040.
[43] *Id.*
[44] *Id.*
[45] *Id.* § 7042(a).
[46] *Id.* § 7042(a)(2); *see id.* § 7042(c).

"directly related to operating, maintaining or improving the manufactured home community." *That is, the landowner must show that its original expected return has declined, because the cost side of its ledger has grown.* If a landowner can show that its costs have gone up, that opens the door to a rent increase based on § 7042(c)'s factors, including market rent. If a landowner invests in its development, and therefore has "improve[ed]" the community, it can also reap the reward from that investment through higher-than-inflation rent increases. But, unless the landowner has seen its costs increase for "operating, maintaining or improving the manufactured home community," the Rent Justification Act preserves the initial relationship the landowner creates between its revenue and its costs. The homeowner with her home semi-permanently planted in the community is protected from material increases in rent unrelated to the benefits and costs of living in the community, and the landowner receives the return it originally anticipated.[47]

Thus, "[t]o make a *prima facie* case that a rent increase is directly related to improving the community—a requirement that we have previously described as 'modest'—it suffices for the community owner to offer evidence that in making some capital improvement, the community owner has incurred costs that are likely to reduce its expected return."[48] Once the community owner has established its *prima facie* case, homeowners are "entitled to rebut that *prima facie* case by offering evidence of [their] own that the expenditure did not in fact reflect any increase in costs—for example because the expenditure was offset by reduced

---

[47] *Bon Ayre Land, LLC v. Bon Ayre Cmty. Ass'n. (Bon Ayre II)*, 149 A.3d 227, 234-35 (Del. 2016).
[48] *Sandhill Acres*, 210 A.3d at 729 (citing *Bon Ayre II*, 149 A.3d at 235–36).

expens es in other areas . . . ."[49]  Homeowners are allowed to "fairly test" the community owner's proffered justifications.[50]

If adopted, Wild Meadows' interpretation of the Act would negate a homeowner's ability to rebut a *prima facie* case, undermining the Act's stated goal of balancing the homeowner's and community owner's competing interests.  If tenants are not allowed to compel the production of documents relevant to the proceedings, the process skews heavily in the favor of community owners, leaving the tenants little opportunity to reasonably vet the information selected and provided by the community owner.  Permitting an arbitrator to compel production of documents, subject to reasonable confidentiality protections, furthers the Act's goals of ensuring a fair process for all parties in a rent justification dispute.

Furthermore, this Court has implicitly, if not explicitly, recognized the importance of a homeowner's ability to test a community owner's justifications.  For example, in *Donovan Smith HOA v. Donovan Smith MHP, LLC*, we affirmed the arbitrator's holding that the increase in rent was justified.[51]  But we expressly rejected the idea that nothing in the statute requires the community owner to expose its financial information (i.e. its underlying business records) to scrutiny.[52]  We explained that "it is not the case that a landowner may proceed under the [Act] to argue that it is entitled to an above-inflation rent increase without

---

[49] *Id.*

[50] *See Donovan Smith HOA v. Donovan Smith MHP, LLC*, 2018 WL 3360585, at *3 (Del. July 10, 2018).

[51] *Id*. at *2.

[52] *Id*. at *2-3.

also being willing to produce documents to contesting homeowners that allow them to *fairly test* that assertion."[53]  Further, we recognized that the *arbitrator* may control the production of documents by imposing "appropriate conditions" to address confidentiality concerns and may "require production" of the relevant books and records if the homeowners "fairly demand" that discovery.[54]

This Court expanded its discussion of discovery in *Sandhill Acres MHC, LLC v. Sandhill Acres Home Owners Association.*[55]  We explained that "both sides of the community owner's financial statements bear logically on whether and to what extent a rent increase is 'directly related to operating, maintaining or improving the manufactured housing community' under the Act."[56]  Additionally, we emphasized that the parties to a case *should* shape the record by exchanging requests for information and stressed that

> a community owner seeking a rent *increase would not be in any equitable or legal position to resist a reasonable request for information about its costs and profit margins . . . .* As a bottom-line matter, the community owner must make a choice. *Refrain from seeking an increase above inflation and thus be able to keep its financial information to itself, or seek an increase and be willing to incur the concomitant requirement to justify that*

---

[53] *Id*. at *3 (emphasis added).

[54] *See id*. ("To the extent that there is a legitimate basis for claiming confidentiality as to any business record—a status that has to be proven—the Superior Court, *or the arbitrator in the first instance*, may condition discovery and use of the document to appropriate conditions."); *id*. ("[T]he outcome could be quite different, especially if the homeowners fairly demand discovery of the landowner's books and records relevant to the question of whether the proposed above-inflation rent increase is 'directly related to operating, maintaining or improving the manufactured home community' and the arbitrator fails to require production of those records.").

[55] 210 A.3d at 731-32.

[56] *Id.* at 731.

> *increase.* On a complete record, that allows the tenants to make fair arguments and the arbitrator to assess whether *the proposed increase satisfies the directly related requirement in view of a balanced record taking into account both key factors: revenues and costs.*[57]

We have also acknowledged the arbitrator's power to oversee and direct such discovery by addressing legitimate confidentiality concerns through restrictions or by denying excessively burdensome requests.[58] Both *Donovan Smith* and *Sandhill Acres* acknowledge that a community owner's relevant business records are a necessary part of a homeowner's ability to rebut a community owner's *prima facie* case.

Thus, based on a plain reading of the Act, the applicable sections of the Delaware Administrative Code, and our jurisprudence, we conclude that the Superior Court correctly held that Weidman, as an arbitrator, possessed the authority to compel the production of documents. Furthermore, the Superior Court did not err in ruling that Weidman correctly compelled the discovery of Wild Meadows relevant financial information.

Wild Meadows cannot create a unilateral process where it, as the community owner, gets to singularly choose what documents make the record. If failing to obtain an above-inflation rent increase poses an "enormous risk for the community owner,"[59] then being assessed an above-inflation rent increase without a mechanism to test the community owner's assertions poses an enormous risk to homeowners, particularly given the deference

---

[57] *Id.* (emphasis added).
[58] *Id.*
[59] Reply Br. 10-11.

14

that a reviewing court applies to an arbitrator's decision.[60]  Imposing such an asymmetric burden on homeowners is contrary to the statute's purpose of "accommodate[ing] the conflicting interests" of homeowners and landowners.[61]  Therefore, Weidman acted within his authority by compelling Wild Meadows to produce business records to afford the HOA a chance to fairly test Wild Meadows' justifications for its rent increase.

To raise rent above the CPI-U is a business decision that community owners should not take lightly.  A community owner has two options—either keep rent adjustments at inflation and keep business records private or seek higher rent adjustments and bear the responsibility of justifying that increase.[62]  Community owners have a modest threshold burden to justify the increase; but homeowners are afforded the opportunity to test that threshold.  Here the community owner sought an increase above inflation; thus, it may be compelled to produce records relating to its revenues and costs.[63]

---

[60] *See, e.g.*, *Sandhill Acres*, 210 A.3d at 731 n.37 ("The Rent Justification [Act] is somewhat unclear about the appellate standard of review, stating that the reviewing court must determine 'whether the record created in the arbitration is sufficient justification for the arbitrator's decisions and whether those decisions are free from legal error.' Considering substantially similar language in a prior version of the statute, we previously observed that this language sounds somewhat like substantial evidence review. . . .  We therefore conclude that substantial evidence review is the appropriate standard of review for the arbitrator's factual findings." (quoting 25 *Del. C.* § 7044 (current version at § 7054)) (citing *Bon Ayre Land LLC v. Bon Ayre Cmty. Ass'n (Bone Ayre I)*, 133 A.3d 559, 2016 WL 747989, at *2 n.11 (Del. Feb. 25, 2016) (TABLE))).
[61] *See* 25 *Del. C.* § 7040.
[62] 210 A.3d at 731.
[63] *Id.*

## B.     Ability to Impose Confidentiality Agreement

Wild Meadows also argues the Superior Court erred in holding that Weidman had statutory authority to impose a confidentiality agreement that Wild Meadows contested. Specifically, Wild Meadows complains that:

> Petitioner is a privately-held business, and engages in its business in a highly competitive market which today, in Delaware, is dominated by large competitors.  If Petitioner's internal financial information were made available generally or disclosed publicly, Petitioner would face incalculable irreparable harm. Petitioner's competitors would gain an enormous tactical and strategic advantage, to the permanent detriment of Petitioner and of the value of its investment in Wild Meadows.  Thus, an "attorney's eyes-only level of protection was included in Petitioner's proposed confidentiality stipulation . . . .
>
> . . . .
>
> The Confidentiality Stipulation did not and could not have "reasonably protected" Petitioner's private, competitively sensitive and highly confidential financial documents without an attorney's eyes-only provision.  If the arbitrator is imbued with the authority to compel discovery, a confidentiality agreement protecting the highly confidential documents of parties with an attorney's eyes-only tier must be offered and made available to the parties in the arbitration.[64]

We disagree.

The Authority, under 25 *Del. C.* § 7011(c)(1), has promulgated 1 *Del. Admin. C.* § 202-7.17.  Under 1 *Del. Admin. C.* § 202-7.17:

> Any party may request that the arbitrator accord confidential treatment to some or all of the information contained in a document.  If the claim of confidentiality is

---

[64] Opening Br. 16, 43.

challenged by any party, then the party claiming confidential treatment must demonstrate to the arbitrator that the designated information is confidential as recognized by state law. Notwithstanding any claim of confidentiality, any party to the proceeding shall be allowed to inspect a copy of the confidential document upon the signing of a confidentiality agreement in a form approved by the arbitrator.[65]

Further, this Court has emphasized that "legitimate confidentiality and proprietary concerns should be addressed by the arbitrator through the imposition of use restrictions."[66] Thus, the arbitrator possessed the authority to impose a confidentiality agreement on the parties.

Wild Meadows contends that a confidentiality agreement without an attorney-eyes only provision insufficiently protected its interests and exposed it to "irreparable harm."[67] Yet Weidman recognized, and addressed, the need for confidentiality when dealing with Wild Meadows' business records. After taking input from both parties, Weidman crafted a confidentiality agreement in which he balanced the legitimate business interests of Wild Meadows against the HOA's interest in "fairly testing" Wild Meadows' justifications.

Section 5 of the contested agreement limits who may access confidential information:

5. Confidential Discovery Material may be disclosed, summarized, described, characterized, or otherwise communicated or made available in whole or in part only to the following persons:
A. The Parties, and the directors, officers, or Board members of the Association who are attending the Arbitration and assisting counsel with decisions

---

[65] 1 *Del. Admin. C.* § 202-7.17.

[66] *Sandhill Acres*, 210 A.3d at 731; *see also Donovan Smith*, 2018 WL 3360585, at *3 (citing Super. Ct. Civ. R. 26(c)(7); 1 *Del. Admin. C.* § 202-7.17).

[67] A129.

concerning the Litigation, to the extent deemed reasonably necessary by counsel of record for the purpose of assisting in the prosecution or defense of the Arbitration for use in accordance with this Stipulation, only if and after such directors, officers, or Board members of the Association execute Exhibit A attached hereto;

B. Counsel who represent Parties in this Arbitration (including in-house counsel), and the partners, associates, paralegals, secretaries, clerical, regular and temporary employees, and service vendors of such counsel (including outside copying and Arbitration support services) who are assisting with the Arbitration for use in accordance with this Stipulation;

C. Subject to Paragraph 7, experts or consultants assisting counsel for the Parties, and partners, associates, paralegals, secretaries, clerical, regular and temporary employees, and service vendors of such experts or consultants (including outside copying services and outside support services) who are assisting with the Arbitration;

D. The Arbitrator, persons employed by the Arbitrator, and court reporters transcribing any hearing in this Arbitration, and the Court, persons employed by the Court, and court reporters transcribing any hearing in any appeal therefrom; and

E. Any other person only upon (i) order of the Arbitrator entered upon notice to the Parties, or (ii) written stipulation of, or statement on the record by, the Producing Party who provided the Discovery Material being disclosed, and provided that such person signs an undertaking in the form attached as Exhibit A hereto.

**Recipients of any Confidential Material are prohibited from copying or permitting to be copied (whether by taking notes, photographs, Xerox machine or**

18

**otherwise), or creating an electronic image of all or any portion of the Confidential Material, except for use by counsel for the parties for use in the Arbitration. Recipients shall not permit any person to review all or any portion of the Confidential Material, other than as provided in this Agreement. Further, Recipients shall not discuss or disclose any Confidential Material to any 3rd Party outside of the persons set forth in Paragraphs S(A) through (E).[68]**

These individuals may only receive confidential documents if they agree to sign this agreement.[69]

Section 12 adds that "[a]ll materials designated as Confidential Discovery Materials or filed pursuant to Paragraph 10 shall be released from confidential treatment only upon Order of a Court."[70] Additionally,

> [t]he Parties agree to be bound by the terms of this Stipulation pending the entry by the Court of this Stipulation, and any violation of its terms shall be subject to the same sanctions and penalties as if this Stipulation had been entered by a Delaware Court of competent Jurisdiction.[71]

Wild Meadows does not expressly address why the specific provisions of this agreement are inadequate. Instead, Wild Meadows vaguely argues that, as a private entity that engages in a competitive market, it faces "irreparable harm" if it is forced to disclose its business records.[72] The party claiming a need for confidentiality, or greater confidentiality, bears the burden of proof; business records are not entitled to an "attorneys' eyes only"

---

[68] A079-80.
[69] A075.
[70] A083.
[71] A085.
[72] A129-30.

designation simply because they are business records. Wild Meadows' vague assertions are not useful in assessing the need for greater protection because they do not identify legitimate deficiencies in the actual language of the agreement. To the contrary, Weidman carefully balanced Wild Meadows' concerns in order to "reasonably protect" its sensitive information.

Therefore, we affirm the Superior Court's conclusion that Weidman possessed the statutory authority to impose this confidentially agreement on the parties.

### III.    CONCLUSION

For the reasons provided above, we AFFIRM the Superior Court's judgment.